SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Templo Fuente De Vida Corp., et al.  v. National Union Fire Insurance Co.** (A-18-14) (074572)

**Argued October 14, 2015 -- Decided February 11, 2016**

**SOLOMON, J., writing for a unanimous Court.**

The issue in this appeal is whether, in order to disclaim coverage, an insurance company must show it was prejudiced by an insured's failure to comply with the notice provision in a Directors and Officers "claims made" policy.

Plaintiffs, Templo Fuente De Vida Corp. (Templo) and Fuente Properties, Inc. (Fuente) (collectively, plaintiffs), engaged Morris Mortgage Inc. (MMI) to find funding sources for the purchase of property.  Plaintiffs entered into a purchase agreement and MMI identified Merl Financial Group, Inc. (Merl) as a possible funding source.  When the final closing date for the property arrived, neither Merl nor any of the sources of financing listed in the commitment documents were able to fund the loan to purchase the property, and the sellers terminated the purchase agreement.  Plaintiffs filed a complaint against Merl, among others.  The defendants named in the complaint were served with the first-amended complaint on or about February 21, 2006.

Prior to the filing of the complaint, Merl was restructured and renamed First Independent Financial Group (First Independent).  First Independent purchased a $1 million Directors, Officers and Private Company Liability Insurance Policy (the Policy) from National Union Fire Insurance Company of Pittsburgh (National Union) covering the time period from January 1, 2006 through January 1, 2007.  The policy is a "claims made" policy, as opposed to an "occurrence" policy, and required in pertinent part that, as a condition precedent to coverage under the policy, "written notice to the Insurer of any Claim made against an Insured as soon as practicable."

On August 28, 2006, more than six months after being served with the first amended complaint, First Independent provided notice of the claims to National Union.  National Union denied coverage, asserting, among other defenses, that the claims against First Independent were made outside of the policy period, and that notice of the claims was not given to National Union "as soon as practicable."  Plaintiffs and several defendants, including First Independent, reached a settlement agreement in excess of $3 million and defendants committed to pay plaintiffs a portion of that liability.  To cover the remainder of the settlement amount, First Independent assigned to plaintiffs its rights and interests under the Policy.

Plaintiffs initiated this litigation against National Union seeking a declaratory judgment that First Independent was an insured under the Policy, and that plaintiffs were entitled to coverage.  Plaintiffs moved for partial summary judgment and National Union filed a cross-motion for summary judgment on all counts.  The trial court granted National Union's cross-motion for summary judgment and dismissed plaintiffs' complaint with prejudice.  The trial court found that although there was insufficient proof to establish that the claims had been made outside the policy period, the claim for coverage was nevertheless barred because First Independent failed to provide National Union with notice of plaintiffs' claims "as soon as practicable," as required by the specific terms of the policy.

The trial court relied on Associated Metals & Minerals Corp. v. Dixon Chemical & Research, Inc., 82 N.J. Super. 281 (App. Div. 1963), in which the Appellate Division held that a five and one-half month delay in notice to the insurance company was not "as soon as practicable."  In addition, the court concluded that under Zuckerman v. National Union Fire Insurance Co., 100 N.J. 304 (1985), the insurer did not need to "show appreciable prejudice in order to avoid coverage based on a failure to meet the notice requirement of a claims made policy."

The Appellate Division affirmed, noting the policy "clearly required that notice be provided both within the policy period and as soon as practicable."  The panel, like the trial court, relied on Zuckerman in rejecting plaintiffs' argument that National Union had to demonstrate prejudice as a result of the delayed notice before it could deny coverage.  The Appellate Division held that, unlike "claims made" policies, "occurrence" policies require the insurance company to establish prejudice to avoid coverage.

The Supreme Court granted plaintiffs' petition for certification, to address the issue of whether an insurance company must establish prejudice before denying coverage based on the insured's failure to comply with a notice condition in a "claims made" policy. 220 N.J. 42 (2014).

**HELD:** First Independent's failure to comply with the notice provisions of the bargained for Directors and Officers "claims made" policy constituted a breach of the policy, and National Union may decline coverage without demonstrating appreciable prejudice.

1. The Court reviews de novo the trial court's legal determination that an insurance company under a "claims made" policy need not show prejudice before it may disclaim coverage on the basis of an insured's failure to provide notice "as soon as practicable." The Court's interpretation of insurance policies, such as the National Union policy in this case, is governed by commonly recognized rules of construction. If the plain language of the policy is unambiguous, the Court will "not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008). When the provision at issue is subject to more than one reasonable interpretation, it is ambiguous, and the "court may look to extrinsic evidence as an aid to interpretation." Ibid. (pp. 12-13)

2. In Zuckerman, supra, the Court explained that under a traditional "occurrence" policy, it is the "occurrence" of the peril that is insured, and so long as that peril occurred during the life of the policy, coverage attaches. 100 N.J. at 310-11. The Court also explained that "in the 'claims made' policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place." Id. at 311 (emphasis added) (quoting S. Kroll, "The Professional Liability Policy 'Claims Made,'" 13 Forum 842, 843 (1978)). "Claims made" policies commonly require that the claim be made and reported within the policy period, thereby providing a fixed date after which the insurance company will not be subject to liability under the policy. "Claims made" policies also tend to have an additional "notice of claim" provision "phrased in terms of the insured notifying the insurer of a claim or potential claim 'promptly' or the like[.]" 13 Couch on Insurance 3d § 186:13 (2009). (pp. 13-18)

3. In Cooper v. Government Employees Insurance Co., the Court first enunciated the principle that notwithstanding the unambiguous notice provisions within a particular "occurrence" policy, the "public interest" required the insurance company to show prejudice to "forfeit coverage" for an insured's breach of the policy's notice provisions. 51 N.J. 86, 94 (1968). The Court concluded that because the insurance contract was a contract of adhesion, it was against the public interest to forfeit the insured's bargained-for coverage by reason of its failure to provide timely notice. Id. at 94. In Zuckerman, supra, the Court determined that while the Cooper doctrine of "appreciable prejudice" is applicable to "occurrence policies," "[i]t has . . . no application whatsoever to a 'claims made' policy that fulfills the reasonable expectations of the insured with respect to the scope of coverage." 100 N.J. at 324 (emphasis added). (pp. 18-21)

4. Relying on Associated Metals, supra, both the trial court and the Appellate Division found that First Independent's unexplained six-month delay in reporting plaintiffs' claims did not comply with the policy's "as soon as practicable" requirement, which was a condition precedent to coverage. Because plaintiffs fail to assert why the delay occurred, let alone why this Court should consider First Independent's reporting of the claims to be "as soon as practicable" under the "circumstances," there is no factual dispute that the notice given was not timely. On this record, the unexplained six-month delay did not satisfy the policy's notice requirement. (pp. 21-23)

5. In the vast majority of "occurrence" policies, the policy holders are "unsophisticated" and, as a result, "courts have taken special consideration of the fact that the policy holders were consumers unlikely to be conversant with all the fine print of their policies" and "found that strict adherence to the terms of the notice provisions would result too harshly against [such insureds.]" MGIC Indem. Corp. v. Cent. Bank of Monroe, 838 F.2d 1382, 1387 (5th Cir. 1998). Those equitable concerns do not control the Court's analysis of the "as soon as practicable" notice requirement of the Directors and Officers "claims made" policy here. The notice requirement within the contract of insurance sold by National Union to First Independent sufficiently conformed to the objectively reasonable expectations of the insured and, hence, did not violate the public policy of New Jersey. First Independent's failure to comply with the notice provisions of the bargained for Directors and Officers policy constituted a breach of the policy, and National Union may decline coverage without demonstrating appreciable prejudice. (pp. 23-28)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

TEMPLO FUENTE DE VIDA CORP.
and FUENTE PROPERTIES, INC.,

    Plaintiffs-Appellants,

        v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, P.A.,

    Defendant-Respondent.

        Argued October 14, 2015 – Decided February 11, 2016

        On certification to the Superior Court,
        Appellate Division.

        Mitchell B. Seidman argued the cause for
        appellants (Seidman & Pincus, attorneys).

        Andrew L. Indeck argued the cause for
        respondent (Weber Gallagher Simpson
        Stapleton Fires & Newby, attorneys; Mr.
        Indeck and Brad A. Baldwin, on the brief).

    JUSTICE SOLOMON delivered the opinion of the Court.

    In this appeal, we are called upon to determine whether, in order to disclaim coverage, an insurance company must show it was prejudiced by an insured's failure to comply with the notice provision in a Directors and Officers "claims made" policy.

    In the instant case, the insured, who had been sued for damages by plaintiffs, entered into a settlement whereby it agreed to assign its rights and interests under the insurance

1

policy to plaintiffs.  However, when plaintiffs sought to recover under the policy, the insurer denied coverage because the insured breached the policy's notice conditions.  The trial court granted summary judgment to the insurance company, finding that notice was not given "as soon as practicable," and that the insurance company need not show appreciable prejudice as a result of the delay in notice in order to refuse coverage.  Plaintiffs appealed, and the Appellate Division affirmed substantially for the reasons given by the trial court.

We hold that because this Directors and Officers "claims made" policy was not a contract of adhesion but was agreed to by sophisticated parties, the insurance company was not required to show that it suffered prejudice before disclaiming coverage on the basis of the insured's failure to give timely notice of the claim.

I.

A.

We begin with a review of plaintiffs' claims against the insured that underlie the instant litigation and were ultimately settled.  With respect to those claims, the following facts are not in dispute.

Plaintiffs, Templo Fuente De Vida Corp. (Templo) and Fuente Properties, Inc. (Fuente) (collectively, plaintiffs),[1] engaged Morris Mortgage Inc. (MMI) to find funding sources for the purchase of property to relocate plaintiffs' church and daycare centers. Approximately two and one-half months later, plaintiffs made a down payment and entered into a purchase agreement to buy a property in North Bergen (the property), conditioned upon plaintiffs securing mortgage financing by a certain date. After several extensions of the financing date, MMI identified Merl Financial Group, Inc. (Merl) as a possible funding source.

Over the course of approximately nine months, Merl gave plaintiffs a series of funding commitments in exchange for ten percent of the total amount of each commitment. However, when the final closing date for the property arrived, neither Merl nor any of the sources of financing listed in the commitment documents were able to fund the loan to purchase the property, and the sellers terminated the purchase agreement. As a result of the losses sustained in their attempt to purchase the

---

[1] Plaintiffs, Templo and Fuente, are separate New Jersey corporations. Templo was formed in 1993 and operated a church for religious services and child and adult daycare centers. Templo formed Fuente in 2002 to acquire a property for relocation.

property, plaintiffs filed a complaint[2] against Merl, among others.  The defendants named in the complaint were served with the first-amended complaint on or about February 21, 2006.

Sometime prior to the filing of the complaint, Merl was restructured and renamed First Independent Financial Group (First Independent).  First Independent purchased a $1 million Directors, Officers and Private Company Liability Insurance Policy (the Policy) from National Union Fire Insurance Company of Pittsburgh (National Union) covering the time period from January 1, 2006 through January 1, 2007.

The policy is a "claims made" policy, as opposed to an "occurrence" policy, and contained "NOTICE/CLAIM REPORTING PROVISIONS," section 7, requiring that, as a condition precedent to coverage under the policy, "The Company or the Insureds"

> give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either: (1) anytime during the Policy Period or during the Discovery Period (if applicable); or (2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

---

[2] In the complaint, which was amended several times between 2005 and 2009 to add claims and parties, plaintiffs alleged breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, negligence, negligent misrepresentation, conversion, breach of fiduciary duty, violation of the Consumer Fraud Act, professional malpractice, professional negligence, violation of New Jersey's racketeering statute, and fraud.

4

The mutual interests of the insured and the insurer served by the notice provisions of the policy are reflected in section 8, "DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)," which grants the insured the right to defend itself against the claim, while simultaneously guaranteeing the insurer the ability to "associate" with the insured in that defense. Section 8 further allows the insured to "tender defense of the Claim to the Insurer," but prohibits any action by the insured from the time it receives the claim until a defense is tendered by the insurance company, if so requested. This prohibition checks action that could prejudice the insurance company, the insured, or both, such as interposing an ill-conceived defense strategy, or engaging in settlement discussions. Compliance by the insured commands its defense by the insurance company and permits the insured to "associate" with the insurance company in the defense of the claim, and settlement negotiations.[3]

---

[3] Section 8 of the policy states, in pertinent part:

> The insurer does not assume any duty to defend. The Insureds shall defend and contest any claim made against them.
>
> Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of all Insureds to the Insurer pursuant

On August 28, 2006, more than six months after being served with the first amended complaint, and after retaining counsel and filing an answer, First Independent provided notice of the claims to National Union.  National Union denied coverage, asserting, among other defenses, that the claims against First Independent were made outside of the policy period, and that notice of the claims was not given to National Union "as soon as practicable."

Plaintiffs and several defendants, including First Independent, reached a settlement agreement in the underlying

to the notice provisions of Clause 7 of this policy.  This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the policy.  Further, from the date the Claim is first made against the Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim.  Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent.  The assumption of the defense of the Claim shall be effective upon written confirmation sent thereof by the Insurer to the Named Entity. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense and the negotiation of any settlement of any Claim, subject to the provisions of this Clause 8.

6

litigation. Under that agreement, the settling defendants'
liability exceeded $3 million, and they committed to pay
plaintiffs a portion of that liability by a fixed date. To
cover the remainder of the settlement amount, First Independent
assigned to plaintiffs its rights and interests under the
Policy.[4] Thereafter, the trial court dismissed plaintiffs'
complaint as settled.

### B.

Plaintiffs initiated this litigation against National Union
seeking a declaratory judgment that First Independent was an
insured under the Policy, and that plaintiffs were entitled to
coverage. Upon the completion of discovery, plaintiffs moved
for partial summary judgment, and National Union filed a cross-
motion for summary judgment on all counts.

Following oral argument, the trial court granted National
Union's cross-motion for summary judgment and dismissed
plaintiffs' complaint with prejudice. The trial court found
that although there was insufficient proof to establish that the
claims had been made outside the policy period, the claim for
coverage was nevertheless barred because First Independent
failed to provide National Union with notice of plaintiffs'

---

[4] Some of the settling defendants made their payments under the
settlement agreement, but other settling defendants did not.
Plaintiffs obtained a judgment for the unpaid settlement amounts
against the defaulting defendants.

claims "as soon as practicable," as required by the specific terms of the policy.  In reaching this conclusion, the trial court relied on Associated Metals & Minerals Corp. v. Dixon Chemical & Research, Inc., 82 N.J. Super. 281, 316-17 (App. Div. 1963), certif. denied, 42 N.J. 501 (1964), in which the Appellate Division held that a five and one-half month delay in notice to the insurance company was not "as soon as practicable."

In addition, the trial court concluded that under Zuckerman v. National Union Fire Insurance Co., 100 N.J. 304 (1985), National Union did not need to "show appreciable prejudice in order to avoid coverage based on a failure to meet the notice requirement of a claims made policy," and that "to hold that such unambiguous [notice] language is unenforceable absent appreciable prejudice would be an unjust and inequitable expansion of the coverage provided."

The Appellate Division affirmed the trial court, noting the policy "clearly required that notice be provided both within the policy period and as soon as practicable."  Accordingly, the panel held that "coverage was properly denied to the insureds and, by extension, to plaintiffs as their assignees."

The panel, like the trial court, relied on Zuckerman in rejecting plaintiffs' argument that National Union had to demonstrate prejudice as a result of the delayed notice before

8

it could deny coverage.  The Appellate Division held that only "occurrence" policies require the insurance company to establish prejudice to avoid coverage because "claims made" policies differ from "occurrence" policies.  Under the former, coverage is triggered when the insured notifies the insurance company of the claim, while under the latter, coverage is triggered if the act or omission giving rise to the claim occurred during the policy period.

We granted plaintiffs' petition for certification, to address the issue of whether an insurance company must establish prejudice before denying coverage based on the insured's failure to comply with a notice condition in a "claims made" policy. 220 N.J. 42 (2014).

II.

Plaintiffs assert three main arguments in support of their claim that National Union should have been required to show prejudice in order to deny coverage.  First, plaintiffs challenge the Appellate Division's and trial court's reliance on Associated Metals to conclude that notice was untimely because, unlike the case at bar, the claim at issue in Associated Metals involved an injury resulting from an accident, which entails a more time-sensitive inquiry requiring the insurance company to conduct an investigation while the facts remain fresh in the minds of the parties involved.  Further, plaintiffs assert that

9

because the policy at issue in Associated Metals did not have dual reporting requirements -- that the claim be reported within the policy period and "as soon as practicable" -- the insurance company did not have the "safety net" of both an objective and a subjective notice requirement that was available to National Union in the instant case.

Second, plaintiffs argue that the Appellate Division improperly expanded this Court's ruling in Zuckerman by permitting insurance companies to deny coverage without showing prejudice, not only where the insured gives notice of the claim outside of the policy period, as in Zuckerman, but also when the insured fails to give prompt notice of the claim within the policy period. Plaintiffs urge this Court to restrict our holding in Zuckerman to instances where the insured reports a claim outside of the policy period.

Finally, plaintiffs rely on authority from other jurisdictions, which they assert is consistent with a "growing trend in insurance law," requiring insurance companies to demonstrate prejudice before disclaiming coverage for failure to give timely notice within the period of a "claims made" policy. See Prodigy Commc'ns. Corp. v. Agric. Excess & Surplus Ins. Co., 288 S.W.3d 374, 382-83 (Tex. 2009) (holding inherent benefit of "claims made" policy is insurer's ability "to 'close its books' on a policy at its expiration and thus to attain a level of

10

predictability unattainable under standard occurrence policies" (quoting F.D.I.C. v. Mijalis, 15 F.3d 1314, 1330 (5th Cir. 1994))); see also Fulton Bellows, LLC v. Fed. Ins. Co., 662 F. Supp. 2d 976, 993-94 (E.D. Tenn. 2009) (adopting rationale and holding of Prodigy).

National Union argues that the terms of the policy are clear and unambiguous, with coverage conditioned on the insured providing notice of a claim within the policy period and "as soon as practicable." National Union further claims that the trial court and Appellate Division properly relied on Associated Metals and Zuckerman in concluding that New Jersey jurisprudence does not require insurance companies to demonstrate prejudice before disclaiming coverage on a "claims made" policy based on an insured's violation of the policy's notice requirements.

Finally, National Union contends that existing New Jersey authority governs this case and, as such, there is no cause to consider authority from other jurisdictions.

### III.

#### A.

Turning to the law applicable to this case, we note that we review the trial court's grant of summary judgment de novo under the same standard as the trial court. Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012). That standard mandates that summary judgment be granted "if the pleadings,

11

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). When no issue of fact exists, and only a question of law remains, this Court affords no special deference to the legal determinations of the trial court. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Because there is no genuine issue of material fact on this record, we review de novo the trial court's legal determination that an insurance company under a "claims made" policy need not show prejudice before it may disclaim coverage on the basis of an insured's failure to provide notice "as soon as practicable."

B.

Our interpretation of insurance policies, such as the National Union policy in this case, is governed by the following commonly recognized rules of construction. "In attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008). If the plain language of the policy is unambiguous, we will "not 'engage in a strained construction to support the imposition of liability' or write a better policy for the

12

insured than the one purchased."  Ibid. (quoting Progressive

Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273 (2001)).

When the provision at issue is subject to more than one

reasonable interpretation, it is ambiguous, and the "court may

look to extrinsic evidence as an aid to interpretation."  Ibid.

Only where there is a genuine ambiguity, that is, "'where the

phrasing of the policy is so confusing that the average

policyholder cannot make out the boundaries of coverage,'"

should the reviewing court read the policy in favor of the

insured.  Progressive Cas. Ins. Co., supra, 166 N.J. at 274

(quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)).

"When construing an ambiguous clause in an insurance policy,

courts should consider whether clearer draftsmanship by the

insurer 'would have put the matter beyond reasonable question.'"

Ibid. (quoting Doto v. Russo, 140 N.J. 544, 547 (1995)).

C.

Guided by the law governing interpretation of insurance

contracts, we turn to the conceptual differences between "claims

made" and "occurrence" policies.  In doing so, we focus on the

notice provisions that each policy typically contains, as well

as the function that those provisions fulfill.

We discussed the variations between the two types of

policies in Zuckerman.  There, we explained that "the difference

in the peril insured" distinguishes "claims made" from

13

"occurrence" policies. 100 N.J. at 310-14. Under a traditional "occurrence" policy, it is the "occurrence" of the peril that is insured, and so long as that peril occurred during the life of the policy, coverage attaches. Id. at 310-11. The Court, in Zuckerman, also explained that "in the 'claims made' policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place." Id. at 311 (emphasis added) (quoting S. Kroll, "The Professional Liability Policy 'Claims Made,'" 13 Forum 842, 843 (1978)). "This conceptual difference has important practical implications for the risks that insurers undertake and the premiums that insureds pay." Craft v. Phila. Indem. Ins. Co., 343 P.3d 951, 957 (Colo. 2015).

"Occurrence" policies were created to offer coverage for the harms caused by collision, fire, and other similar occurrences. See Zuckerman, supra, 100 N.J. at 311. Because liability under "occurrence" policies was traditionally triggered by an easily identifiable event, "the insurer [was] ordinarily able to conduct a prompt investigation of the incident and make an early assessment of related injuries and damages with the result that actuarial considerations permit relative certainty in estimating loss ratios, establishing reserves, and fixing premium rates." Stine v. Cont'l Cas. Co., 349 N.W.2d 127, 131 (Mich. 1984); see also Zuckerman, supra, 100 N.J. at 311-12.

14

"Occurrence" policies insuring against professional negligence began to fall out of favor in the latter part of the twentieth century because of the difficulty underwriters faced in setting premiums on policies "with an unlimited 'tail'[5] that extend[ed] beyond the policy period" and thus required insurance companies to forecast far into the future "the costs of the risks assumed." Zuckerman, supra, 100 N.J. at 311. This time lapse made it particularly difficult for insurance companies to accurately calculate premiums for latent injuries, such as those caused by professional malpractice, where "claims [are] frequently . . . made years after the insured event[.]" Id. at 312 (citing S. Kroll, supra, 13 Forum at 850); see also Sparks v. St. Paul Ins. Co., 100 N.J. 325, 330 (1985) (noting that "[f]rom the standpoint of the insured, there is the danger of inadequate coverage in cases in which claims are asserted long after the error or omission occurred, because inflationary factors lead to judgments that are higher than those originally contemplated when coverage was purchased years earlier").

In an attempt to reduce the risks associated with professional liability "occurrence" policies, insurance companies began to shift to "claims made" policies. Under the "claims made" policy, insurance companies possess "the ability

---

[5] A tail is "the lapse of time between the date of the error and the time the claim is made." Id. at 311 (citations omitted).

to calculate risks and premiums with greater exactitude since the insurer's exposure ends at a fixed point, usually the policy termination date." Zuckerman, supra, 100 N.J. at 313 (citations omitted). In other words, although a "claims made" policy insures events that have already occurred, it is limited by the dates of the policy because the insured must provide notice within the policy period. This allows for the "issu[ance] [of] these policies at reduced premiums" by eliminating the potential exposure of a lengthy and unpredictable "tail" of liability. Sparks, supra, 100 N.J. at 329-31; Zuckerman, supra, 100 N.J. at 310. "[I]f there is no timely notice, there is no coverage" under a "claims made" policy. 43 Am. Jur. 2d Insurance § 681 (2013).

Both "claims made" and "occurrence" policies contain reporting requirements, but the importance and terms of those requirements differ. The distinctive roles that reporting requirements play in "claims made" versus "occurrence" policies not only addresses the basic difference between the two policies, but informs our judicial interpretation of those requirements.

In the "occurrence" policy, notice provisions are written "to aid the insurance carrier in investigating, settling, and defending claims." Zuckerman, supra, 100 N.J. at 323. "Claims made" policies commonly require that the claim be made and

reported <u>within</u> the policy period, thereby providing a fixed date after which the insurance company will not be subject to liability under the policy. <u>Sparks</u>, <u>supra</u>, 100 <u>N.J.</u> at 330-31; 7 <u>Couch on Insurance</u> 3d § 102:22 (2013). "Claims made" policies also tend to have an additional "notice of claim" provision "phrased in terms of the insured notifying the insurer of a claim or potential claim 'promptly' or the like[.]" 13 <u>Couch on Insurance</u> 3d § 186:13 (2009).

The prompt notice requirement and the requirement that the claim be made within the policy period in "claims made" policies "maximiz[e] the insurer's opportunity to investigate, set reserves, and control or participate in negotiations with the third party asserting the claim against the insured" and "mark the point at which liability for the claim passes to an ensuing policy, frequently issued by a different insurer, which may have very different limits and terms of coverage." <u>Id.</u> As we noted in <u>Zuckerman</u>:

> Accordingly, the requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed.
>
> By contrast, the event that invokes coverage under a "claims made" policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive

17

> coverage for errors and omissions that took place prior to the policy period.

> [Zuckerman, supra, 100 N.J. at 323-24.]

D.

In Cooper v. Government Employees Insurance Co., we first enunciated the principle that notwithstanding the unambiguous notice provisions within a particular "occurrence" policy, the "public interest" required the insurance company to show prejudice to "forfeit coverage" for an insured's breach of the notice provisions of the policy. 51 N.J. 86, 94 (1968). Our holding in Cooper reflected that, for individual members of the public, insurance policies constitute adhesion contracts to which our courts must "give special scrutiny . . . because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594 (2001).

In Cooper, the insureds were involved in a car accident but failed to report the incident until two years after it occurred. Cooper, supra, 51 N.J. at 88-89. As a result, the insurance company denied coverage on the basis that the insureds breached the policy's requirement of reporting to the insurance company an "accident, occurrence, or loss" "as soon as practicable." Id. at 89-90, 93. The policy at issue in Cooper further

18

provided that the insurance company would not be liable unless "as a condition precedent" the insureds complied with all terms of the policy, including the notice provision.  Id. at 91.  Nevertheless, we concluded that because the insurance contract was not "truly a consensual arrangement and was available only on a take-it-or-leave-it basis," it was against the public interest to forfeit the insured's bargained-for coverage by reason of its failure to provide timely notice.  Id. at 94.  Hence, under Cooper, we required that the insurer of an "occurrence" policy prove both "'a breach of the notice provision and a likelihood of appreciable prejudice.'"  Gazis v. Miller, 186 N.J. 224, 228 (2006) (quoting Cooper, supra, 51 N.J. at 94).

We later reviewed whether the Cooper doctrine of "appreciable prejudice" was applicable in the context of a "claims made" policy.  Zuckerman, supra, 100 N.J. at 322-24.  In Zuckerman, an attorney was sued for malpractice but failed to notify the insurance company until after the professional liability policy expired.  100 N.J. 306-07.  The policy at issue in Zuckerman expressly required that "the claim be asserted and reported to the [insurer] during the policy period."  Id. at 308.  Because the insured attorney failed to comply with this provision, the insurance company denied coverage.  Id. at 307.  The insured then sought a judgment to compel the insurance

19

company to defend him in the malpractice suit and to provide coverage for any resultant liability. Id. at 309. After conducting an exhaustive comparison of "claims made" and "occurrence" policies, we affirmed the Appellate Division's decision to enter summary judgment in favor of the insurer. Id. at 309-13, 324. In issuing our decision, we determined that while "[t]he Cooper doctrine has a clear application to ['occurrence'] policies, . . . [i]t has . . . no application whatsoever to a 'claims made' policy that fulfills the reasonable expectations of the insured with respect to the scope of coverage." Id. at 324 (emphasis added).

Subsequently, in Werner Industries, Inc. v. First State Insurance Co., this Court considered a "claims made" excess "umbrella" liability policy covering commercial risks entered into between sophisticated parties. 112 N.J. 30, 32 (1988). In Werner, we enforced the plain language of the policy, to the detriment of the insured, because we found the reasonable expectations of the parties were met where the insurance policy was procured through a broker, and the bargaining parties were knowledgeable with respect to insurance. Id. at 39. The Court stated:

> Because, in our view, the policy here provided neither unrealistic nor inadequate coverage, and because there has been no showing whatsoever that this policy did not meet . . . expectations, we reverse. Application of

20

canons of construction dictating interpretation against a drafter "should be sensible and in conformity with the expressed intent of the parties." Such canons "should not to be used as excuse to read into a private agreement that which is not there, and that which people dealing fairly with one another could not have intended." Our goal always is to "justly fulfill the reasonable expectations of the assured in the purchase of his insurance policy."

[Id. at 38-39 (internal citations omitted).]

Therefore, to resolve the factual issue of the parties' expectations, which was in dispute, we remanded the matter to "inquir[e] into any background evidence" of whether the insurer induced the insured to enter into the policy by "creat[ing] a different understanding" of the policy provision at issue. Id. at 39.

IV.

A.

In this case, First Independent was issued a Directors and Officers "claims made" policy by National Union to cover the period of January 1, 2006 through January 1, 2007. By the terms of the policy, National Union agreed to provide First Independent coverage for acts or omissions taking place at any time so long as the claim was made and reported to National Union both within the policy period and "as soon as practicable."

21

It is undisputed that First Independent learned of plaintiffs' claims on or about February 21, 2006, when it received the first-amended complaint, and that First Independent failed to notify National Union of these claims until six months later, on August 28, 2006. Relying on Associated Metals, both the trial court and the Appellate Division found First Independent's unexplained six-month delay in reporting plaintiffs' claims did not comply with the policy's "as soon as practicable" requirement, which was a condition precedent to coverage.

Plaintiffs contend that the trial court and Appellate Division erred in relying solely on Associated Metals because the inquiry into whether a claim was reported "as soon as practicable" is fact sensitive. See Bass v. Allstate Ins. Co., 77 N.J. Super. 491, 495 (App. Div. 1962); Miller v. Zurich Gen. Accident & Liab. Ins. Co., 36 N.J. Super. 288, 296 (App. Div. 1955). Hence, plaintiffs claim the trial court and Appellate Division should have "at the very least . . . considered the length of the delay in reporting under the unique set of circumstances presented herein." However, plaintiffs do not assert that the notice provision in question was ambiguous. During oral argument plaintiffs conceded that First Independent did not notify National Union of the claims "as soon as practicable," and plaintiffs did not provide the trial court

22

with any evidence to justify First Independent's reporting delay. In their petition for certification to this Court, plaintiffs merely assert that the trial and appellate courts unfairly determined the issue "without regard to the circumstances."

Because plaintiffs fail to assert why the delay occurred, let alone why we should consider First Independent's reporting of the claims to be "as soon as practicable" under the "circumstances," there is no factual dispute that the notice given was not timely. Thus, we hold only that on this record the unexplained six-month delay did not satisfy the policy's notice requirement. However, we need not and do not draw any "bright line" on these facts for timely compliance with an "as soon as practicable" notice provision.

B.

Having concluded that First Independent failed to give notice of the claims against it "as soon as practicable," we turn to plaintiffs' argument that National Union should not be permitted to disclaim coverage without showing that it was prejudiced by the delay. Essentially, plaintiffs ask us to expand our prior holding in Zuckerman by applying the Cooper doctrine to "claims made" policies where the insured provides notice of a claim within the policy period.

23

National Union, on the other hand, asserts that it need not show prejudice to disclaim coverage where, as here, the terms of the policy clearly and unambiguously require the insured to report a claim "as soon as practicable" as a condition precedent to recovery. National Union further argues that given the sophisticated nature of the parties, the insured's reasonable expectations were not frustrated simply because National Union required strict compliance with the notification conditions of the policy. Finally, National Union contends that the "as soon as practicable" requirement relates to the insurer's risk in this Directors and Officers policy. Specifically, the insurer's duty to cover costs, as part of the policy limits, is affected by the insured's failure to give notice "as soon as practicable." National Union asserts this failure deprives the insurer of its negotiated right to associate with the defense, and play a role in settlement if that occurs, thereby limiting the potential exposure of the insurer under the policy's terms. In sum, the insurer argues that it is not a surety for the insured under their sophisticated policy covering certain errors and omissions within a business operation.

Turning to the nature of these parties, we note first the importance of the characteristics of First Independent. First Independent is not an individual and this policy is not a simple personal liability insurance policy. To the contrary, the

insured was an incorporated business entity that engaged in complex financial transactions. During the initial application process for the Directors and Officers policy, First Independent listed itself as having at least fourteen full-time employees, two part-time employees, and a human resources department. The policy covered a broad variety of complex civil and criminal matters, including employment practices claims and security claims. In the procurement of a complex policy like this one, First Independent did not simply obtain a professional liability policy on its own; it sought out a broker, who procured the policy on First Independent's behalf.

We have historically approached "claims made" and "occurrence" policies differently due in large part to the differences between the policyholders themselves. For example, in Cooper, where the "occurrence" policy at issue was a contract of adhesion entered into by parties with unequal bargaining powers, we required the insurer to show prejudice before denying coverage to prevent an unfair result. 51 N.J. at 93-94 (noting terms of "occurrence" policy are "not talked out or bargained for as in the case of contracts generally, [and] that the insured is chargeable with its terms because of a business utility rather than because he read or understood them").

Indeed, in the vast majority of "occurrence" policies, the policy holders are "unsophisticated consumer[s] unaware of all

25

of the policy's requirements." 10 Jeffrey E. Thomas, New Appleman on Insurance Law, Library Edition § 129.05[2] (LexisNexis 2015). As a result, "courts have taken special consideration of the fact that the policy holders were consumers unlikely to be conversant with all the fine print of their policies" and "found that strict adherence to the terms of the notice provisions would result too harshly against [such insureds.]" MGIC Indem. Corp. v. Cent. Bank of Monroe, 838 F.2d 1382, 1387 (5th Cir. 1998); see also Gazis, supra, 186 N.J. at 228-29 (noting when construing notice provisions of "occurrence" policies, New Jersey courts have rejected "a classical contract approach that would have enforced strictly the terms of the policy as written, and instead stated that the contract should be read in accordance with the reasonable expectations of the insured").

Those equitable concerns based on the nature of the parties do not control in our analysis of the "as soon as practicable" notice requirement of the Directors and Officers "claims made" policy here, where the policyholders "are particularly knowledgeable insureds, purchasing their insurance requirements through sophisticated brokers[.]" S. Kroll, supra, 13 Forum at 853. In this arena, insurers are "dealing with a more sophisticated clientele, [who] are much better able to deal with the insurers on an equal footing[.]" Ibid.

26

In this instance we need not make a sweeping statement about the strictness of enforcing the "as soon as practicable" notice requirement in "claims made" policies generally. We need only enforce the plain and unambiguous terms of a negotiated Directors and Officers insurance contract entered into between sophisticated business entities. Its notice conditions contain mutual rights and obligations and a clear and unambiguous requirement that the insured report a claim to the insurer "as soon as practicable," pursuant to section 7, thereby preserving the insurer's rights, under section 8, to associate and influence how the litigation proceeds from its inception.

Therefore, when First Independent began defending against plaintiffs' claims without first notifying National Union, an action explicitly barred by the terms of the policy, it violated a condition precedent of timely notice to National Union, and thus breached the policy's express condition of notice of a claim in order for coverage to attach. We decline plaintiffs' invitation to read the insurance policy at issue as a contract of adhesion, or "'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Chubb Custom Ins. Co., supra, 195 N.J. at 238 (citations omitted).

Consequently, we conclude that the notice requirement within the contract of insurance sold by National Union to First

27

Independent sufficiently conformed to the objectively reasonable expectations of the insured and, hence, did not violate the public policy of New Jersey.  Accordingly, we hold that First Independent's failure to comply with the notice provisions of the bargained for Directors and Officers policy constituted a breach of the policy, and National Union may decline coverage without demonstrating appreciable prejudice.  We recognize that a different conclusion may have been reached in other jurisdictions, but our jurisprudence has never afforded a sophisticated insured the right to deviate from the clear terms of a "claims made" policy.  See Sparks, 100 N.J. at 342 (noting "total inapplicability of the *Cooper* doctrine to a true 'claims made' policy" in New Jersey).

V.

For the foregoing reasons, we affirm the judgment of the Appellate Division.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion.  JUSTICE FERNANDEZ-VINA did not participate.

28

SUPREME COURT OF NEW JERSEY

NO. ___A-18___                    SEPTEMBER TERM 2014

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


TEMPLO FUENTE DE VIDA CORP.
and FUENTE PROPERTIES, INC.,

        Plaintiffs-Appellants,

               v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, P.A.,

        Defendant-Respondent.



DECIDED            February 11, 2016
_____
                Chief Justice Rabner                    PRESIDING
_____
OPINION BY        Justice Solomon
_____
CONCURRING/DISSENTING OPINIONS BY    _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |