```
NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION
```

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0919-16T4

STANLEY L. NIBLACK,

    Plaintiff-Appellant,

v.

UNIVERSITY CORRECTIONAL HEALTHCARE,
UNIVERSITY BEHAVIORAL HEALTHCARE,
DR. JEFFREY DICKERT, MARGARET REED,
UNIVERSITY OF MEDICINE AND DENTISTRY OF
NEW JERSEY, JAMES R. GONZALEZ, DR.
JEFFREY POMERANTZ, ANN JOHNSON, ANDREA
SWEENEY, COLLEEN BLACK, BARBARA MCDONOUGH,
LAURA M. GABRYLEWICZ, JEANINE RODILOSSO,
RICARDY RICOT, DR. MICHELLE BOROWSKI,
DR. PEREIRA, FRANCES BARFI, PAULETTE
BARRINGTON, SUSAN CICALA, JANET BOATENG,
MAUREEN KMOROWSKI, CUTHIA MCCASSITY,
RHODA KUTEYI, WASIAT ADEKUNLE, VERONICA
MORENO, LINDA COLEMAN, THERESA HERNANDEZ,
VALENTIN OKPARE, ROSEILENE PROPHETE,
GTANA HIENES, NADIA JEAN-PIERRE, CELIA
CARRERO, GERALDINE KRAUSS, NICOLE CARLETT,
SUSAN MACAVOY, DEBRA LOWERY, STEPHEN
GRULEN, CHARLES R. HUGHES, KENNETH NELSON,
DR. RALPH WOODWARD, and GARY M. LANIGAN,
sued in their individual capacities for
monetary damages and official capacity for
injunctive and declaratory relief,

    Defendants,

and

DR. FRANCIS MEO, DR. DEEPA
RAJIV, and KENYA COLLINS,

     Defendants-Respondents.

_____

STANLEY L. NIBLACK,

     Plaintiff-Appellant,

v.

UNIVERSITY CORRECTIONAL HEALTHCARE,
UNIVERSITY BEHAVIORAL HEALTHCARE,
DR. JEFFREY DICKERT, MARGARET REED,
UNIVERSITY OF MEDICINE AND DENTISTRY OF
NEW JERSEY, JAMES R. GONZALEZ, DR. PEREIRA,
KENNETH NELSON, DR. RALPH WOODWARD,
and GARY M. LANIGAN, sued in their
individual capacities for monetary
damages and official capacity for
injunctive and declaratory relief,

     Defendants,

and

DR. FRANCIS MEO, DR. DEEPA RAJIV,
and KENYA COLLINS,

     Defendants-Respondents.

_____

Submitted June 4, 2018 — Decided July 10, 2018

Before Judges Ostrer and Firko.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket Nos.
L-2045-15 and L-7785-15.[1]

_____

[1] The trial court consolidated Docket No. L-7785-15 with Docket
No. L-2045-15, after a transfer from Monmouth County of one of the
complaints (MON-L-1061-15).

Ferro and Ferro, attorneys for appellant (Nancy C. Ferro, on the brief).

Farkas & Donohue, LLC, attorneys for respondents Dr. Francis Meo and Dr. Deepa Rajiv (David C. Donohue, of counsel; Meredith T. Zaita, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Kenya Collins (Jason W. Rockwell, Assistant Attorney General, of counsel; Daniel J. Harrison, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Stanley L. Niblack, a former inmate at Northern State Prison ("NSP"), appeals the September 22, 2016 orders granting summary judgment in favor of defendants, Francis Meo, M.D., Deepa Rajiv, M.D., and granting a dismissal in lieu of filing an answer in favor of defendant, Kenya Collins, on plaintiff's complaint for alleged deliberate indifference to his medical condition, in violation of his constitutional rights, alleged violations under the Federal and New Jersey Civil Rights Acts, and his ancillary claims. We affirm.

I.

There is no dispute as to most of the facts developed in plaintiff's brief, considering them in the light most favorable to him. See Robinson v. Vivirito, 217 N.J. 199, 203 (2014) (citation omitted). At the relevant times, plaintiff was incarcerated at NSP in Delmont. Plaintiff suffers from

hypoglycemia, diabetic peripheral neuropathy, and degenerative joint disease. As a result, he was prescribed medications when he was previously incarcerated at Southern State Correctional Facility ("Southern State"). Specifically, he was prescribed Neurontin for his diabetic peripheral neuropathy, and Mobic for his degenerative joint disease. When he was transferred to NSP on May 1, 2014, he was taking his "preferred" pain medication, Neurontin, which was switched at NSP to Naproxen and aspirin, which he contended did not alleviate his pain. Plaintiff asserts that Neurontin is a "non-formulary" drug, which is not on an approved "list" but, nonetheless, could have been prescribed, as opposed to a "formulary" drug, which a doctor could have readily prescribed to him. Movants contend that Neurontin has been "abused" amongst inmates. Consequently, inmates prescribed Neurontin are often switched to a "formulary" medication to test their efficacy. If the formulary drug proves ineffective, then a request to the New Jersey Department of Corrections ("DOC") Medical Director can be submitted to reinstate the non-formulary medication.

On May 6, 2014, Dr. Meo examined plaintiff and prescribed Metformin 500 mg, a 2400 calorie American Diabetes Association ("ADA") diet, which included an afternoon snack, and finger sticks to monitor his hypoglycemia. On May 6, 2014, plaintiff filed a

grievance on the grounds that his healthcare concerns were "unsatisfactorily answered" by healthcare personnel and NSP Assistant Collins, a non-medical employee.

According to his medical chart, Dr. Meo evaluated plaintiff again on May 13, 2014. His A1c level (an indicator of the effectiveness of the diabetes management plan) was 12.0, indicating an elevated glucose level. In response, Dr. Meo adjusted plaintiff's medications and continued glucose monitoring.

On May 20, 2014, plaintiff submitted an Inmate Remedy System Form ("IRSF"), complaining that his medications were changed without his knowledge or the benefit of an examination by a physician.

A second IRSF was submitted by plaintiff on May 22, 2014, stating as follows:

> I am in excruciating diabetic nerve pain. I've been taking Neurontin for many years prescribed by a doctor. Since coming to this facility and having to endure the incompetency of this [medical] staff I am now gravely suffering for it. I've been without the [medication] for two weeks or so and [have] been in constant pain without it ever since. I believe it's a Dr. Pereira that has refused to renew this medication--someone I have never ever seen. This is clearly a deliberate indifference to my medical needs. [Dr. Meo] has taken me off [C]olyburide and lowered my medications drastically on MGR only twice a day. This has drastically shot my sugar to over [200] placing me at risk of harm or even death due to this.

On May 30, 2014, Dr. Meo again reviewed plaintiff's glucose levels and found them elevated. In response, Dr. Meo increased plaintiff's dosage of Metformin and ordered more finger stick testing.

Dr. Meo prescribed another diabetes medication called "Glipizide" on June 4, 2014. Plaintiff's medical status was evaluated again by Dr. Meo on June 16, 2014, who renewed the 2400 ADA diet but discontinued the afternoon snack as "medically unnecessary" because plaintiff's "glycemia ha[d] been generally well controlled" and "[h]is A1c ha[d] always been above the desired proportion for a diabetic person (under 7%) without clinical compromise" according to his medical chart. Plaintiff continued to assert that Naproxen was ineffective in treating his "excruciating" diabetic peripheral neuropathy pain, and that he wanted to resume taking Neurontin.

On June 9, 2014, plaintiff wrote to Margaret Reed, a prison liaison, renewing his complaint and explaining the medical history delineated previously. He also conferred with several nurses, and the patient advocate, and sent letters in support of his requests to various NSP personnel. A "sick call" slip was also submitted by plaintiff on this date with a complaint of "poor vision" and not raising diabetic pain issues. Dr. Meo evaluated plaintiff on June 9, 2014, and plaintiff requested a prescription for Neurontin.

Dr. Meo obliged, and issued a "Non-Formulary Drug Request Form" for Neurontin on that date.

The form inadvertently did not state that plaintiff had been taking Neurontin when he was transferred to NSP. Consequently, Dr. Rajiv, the Medical Director at NSP, denied Dr. Meo's request for Neurontin on July 8, 2014, and she suggested that a formulary medication be prescribed instead.

Reed advised plaintiff that snacks are only ordered for patients who require daily insulin, which was not his medical status at that time.

Another IRSF was filed by plaintiff on June 19, 2014, reiterating his prior complaints. He also confirmed that he submitted two sick call slips, as instructed by NSP representatives, for failure to have his preferred medication (Neurontin) renewed. Dr. Meo renewed an order for finger sticks on July 1, 2014.

On July 16, 2014, plaintiff wrote to Collins, objecting to her upholding the decisions of the medical professionals in respect of his being denied the medical treatment he sought.

Thereafter, on August 8, 2014, Michelle Borowski, D.O., issued a second Non-Formulary Drug Request Form for Neurontin, which did not specify a dosage or indicate that it was previously

A-0919-16T4

prescribed for plaintiff. Consequently, Dr. Rajiv denied the request on August 14, 2014.

On August 22, 2014, Dr. Meo evaluated plaintiff again and assessed his cardiac and metabolic status. Dr. Meo informed plaintiff at that time that Dr. Rajiv denied the request for Neurontin, without performing a consultation or examination.

Since plaintiff was not insulin-dependent on August 22, 2014, he was denied his request for an afternoon snack, in accordance with DOC guidelines. Dr. Meo prescribed him Glutose Gel (a non-prescription medication) to be taken, as needed, if plaintiff felt his blood sugar level was too low. The medical record also states that on this date, Sharmalie Perera, M.D., revised Dr. Borowski's previous Request Form to state that 300 daily mg of Neurontin was being requested for 365 days, and that plaintiff was "currently" being prescribed this medication. There is no dispute that plaintiff was taking Neurontin as of August 22, 2014.

During the period in question, only patients prescribed regular insulin injections were provided an afternoon snack, according to the DOC dietician. Notwithstanding this protocol, plaintiff was provided afternoon snacks as far back as May 16, 2014, even though he did not become insulin dependent until March 12, 2015.

A-0919-16T4

As to Mobic, plaintiff was prescribed this drug on an "as needed" basis while incarcerated at Southern State. On August 8, 2014, Dr. Meo renewed a prescription for Mobic, and discontinued Naproxen, in response to plaintiff's sick call on August 8, 2014. The prescription for Mobic continued to be renewed thereafter.

At his deposition, plaintiff testified that during his Administrative Segregation, he was given afternoon snacks periodically, even though not medically indicated. This was in response to his persistence on this issue. He testified "at times I was receiving a snack" . . . "when I was actually taking finger sticks."

It was noted in the medical record on January 21, 2015, that plaintiff "refuse[d] a diet tray because in the past they wouldn't give him a snack." Another entry dated February 12, 2015, noted that plaintiff "is non [-] compliant with diet," and despite admonitions to the contrary by the doctors, "he will refuse all of the recommended interventions to control his disease" unless "he can have the snack he wants." Ostensibly, there was a lack of motivation on the part of plaintiff "to control his disease" as stated in his medical chart. In plaintiff's opinion, at NSP, "the food is not as high of a level, acceptable level, to bring my sugar to an acceptable level." At his deposition, plaintiff testified that "an apple or orange is not sufficient for a

diabetic" and that he should have been [given] "something with meat on it or peanut butter and jelly" or a "cheese sandwich."

Despite plaintiff's contention that Doctors Meo and Rajiv failed to "consult with or examine [him] prior to denying or discontinuing pain medications", no permanent injuries were sustained by plaintiff emanating from his allegations of not receiving Neurontin or "adequate snacks."

In an oral decision on defendants' summary judgment motion, Judge Dennis F. Carey, III determined that "there's nothing in the record that suggests that the doctors and their assistants did anything . . . that would rise to the level . . . [of] intentional or culpable mistreatment of this plaintiff." In doing so, the judge found:

> The mere disagreement between the prisoner and the treating physicians over medical treatment does not rise to the level . . . of deliberate indifference. Then, if we give [plaintiff] the benefit of every inference, certainly the mere disagreement . . . is the best that [he] can prove.

With respect to Collins, the judge aptly concluded "that clearly non-medical officials could not be liable under the facts of this case for decisions that were medical in nature."

As to Dr. Meo, Dr. Rajiv, and Collins, Judge Carey also found that "there's nothing in the records that suggest[s] that the doctors and their assistants did anything that would . . . rise

to the level . . . [of] intentional or culpable mistreatment of this plaintiff."

As to the civil rights claims brought under 42 U.S.C. § 1983 and N.J.S.A. 10:6-1, the judge determined that Dr. Meo, Dr. Rajiv, and Collins are not "person[s]" as defined by the Code or statute, and he dismissed those allegations with prejudice. Judge Carey also dismissed, with prejudice, plaintiff's claims pled generally under the New Jersey Administrative Code; the Americans with Disabilities Act pursuant to 42 U.S.C. § 12101; and the federal Rehabilitation Act, 29 U.S.C. § 794.

On appeal, plaintiff argues that Dr. Meo and Dr. Rajiv wrongfully failed to provide him prescribed chronic pain medications and snacks in order to maintain his hypoglycemic condition; and that they failed to consult with or examine him prior to modifying his medications, resulting in his excruciating pain and potentially exposing him to a risk of harm. As to Collins, plaintiff contends that she failed to adequately staff the medical department; failed to provide an effective sick call processing system for prisoners in Administrative Segregation; and that she failed to remedy his medical concerns in a prompt fashion. Dr. Meo, Dr. Rajiv, and Collins urge us to affirm the court's orders.

II.

Claims against Dr. Meo and Dr. Rajiv

This court reviews a ruling on summary judgment de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017); Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). Thus, this court considers, as the trial judge did, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente, 224 N.J. at 179 (quoting R. 4:46-2(c)).

As our Supreme Court has instructed: a determination whether there exists a "genuine issue" of material fact that preludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit

a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. Brill, 142 N.J. at 540. "To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citations omitted). If there is no genuine issue of material fact, this court must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). "When no issue of fact exists, and only a question of law remains, [this court] affords no special deference to the legal determinations of the trial court." Templo Fuente, 224 N.J. at 199 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

## III.

We first address the violation of constitutional claims presented by plaintiff pursuant to the Eighth Amendment, as enforced through the Federal and State Civil Rights Acts. Through its prohibition on "cruel and unusual punishments," the Eighth

Amendment to the United States Constitution requires prison officials to provide humane conditions of confinement, which includes the provision of adequate medical treatment. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Accordingly, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under [42 U.S.C.] § 1983." Id. at 105 (emphasis added). We have explained the essential elements of a civil rights action based upon a claim of cruel and unusual punishment:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'
>
> . . . .
>
> The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.' In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]
>
> [Bernstein v. State, 411 N.J. Super. 316, 336 (App. Div. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).]

"Deliberate indifference" consists of three components: "(1) subjective knowledge or a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."

14                                          A-0919-16T4

McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).  It may be established by a showing of care so cursory as to amount to no treatment at all.  Ibid.  However, a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Farmer, 511 U.S. at 837.

As to the first factor, plaintiff failed to sustain his burden because Dr. Meo and Dr. Rajiv addressed his medical history, prescribed what objectively appeared to be appropriate medications to address his symptoms and conditions, and monitored him frequently.  This is evidenced by plaintiff's medical record that his glycemia and A1c "had been generally well controlled."

As to the second factor, there is no evidence to suggest that Dr. Meo or Dr. Rajiv "disregarded" any risk.  Indeed, plaintiff's assertion that Dr. Meo made [him] "vulnerable to go into a diabetic coma or shock" is without merit.

As to the third factor, there was no conduct exhibited by Dr. Meo or Dr. Rajiv that resulted in plaintiff suffering from a diabetic episode or coma.  Fortunately for plaintiff, there is no competent proof he was ever compromised medically or subjected to

15

a risk for a "real possibility of permanent injury." <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004). The medical record is replete with references to plaintiff's own non-compliance. He advised prison officials that "he will refuse all of the recommendations to control his disease" unless "he can have the snack he wants." This clearly militates against a claim of "deliberate indifference" and a culpable state of mind on the part of the defendant doctors. Plaintiff also refused a diabetic meal tray prescribed by a doctor.

Governed by the principles, we are satisfied that the judge correctly found no deliberate indifference. The mere assertion by plaintiff that Dr. Meo was deliberately indifferent to his medical needs because he "only intermittently ordered the proper snack" for him lacks the requisite elements to constitute an Eighth Amendment cruel and unusual punishment violation. There is lack of proof of even a "real possibility" of permanent injury to sustain this cause of action. <u>Ibid</u>. "Mere disagreement" as to medical judgment calls made by Dr. Meo and Dr. Rajiv does not rise to the level of an Eighth Amendment violation, as found by the judge. No expert opinion was presented on behalf of plaintiff.

A-0919-16T4

IV.

Claims against Collins

We begin our analysis with respect to defendant Collins by stating the applicable standard under the dismissal provision, Rule 4:6-2(e), which is well established. When reviewing a litigant's complaint to determine the adequacy of the pleaded claims, the appropriate test is a liberal one. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citation omitted). As the Supreme Court instructed, the review must begin by determining "whether a cause of action is 'suggested' by the facts." Ibid. (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). The Court further explained that courts must review complaints "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim[.] Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). The review of the complaint's allegations should take "a generous and hospitable approach," and afford plaintiff every "reasonable inference" from the alleged facts. Ibid. Our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint. Rieder v. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987) (citation omitted).

Here, Collins filed a Rule 4:6-2(e) motion to dismiss the complaint with prejudice, or in the alternative, summary judgment. In any event, our review is de novo.

Applying these standards, we affirm the judge's decision finding no deliberate indifference as to Collins. In relying upon the instructive authority in Spruill, 372 F.3d at 218, the judge duly found plaintiff did not establish deliberate indifference. The Spruill court differentiated between medical and non-medical prison officials. "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor." Id. at 236 (citing Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993)). Thus, the judge properly dismissed the complaint against Collins as it states no basis for relief.

The trial court ruled that plaintiff failed to establish a prima facie case under Federal and State Civil Rights standards. We agree.

Because plaintiff has not made a prima facie showing of any constitutional violation under the Eighth Amendment or otherwise, there is no need for us to elaborate upon issues of qualified

immunity. For sake of completeness, we simply note that, even assuming a constitutional violation existed here, defendants would clearly enjoy immunity from liability under the circumstances presented. In re Petition for Review of Op. 552 of Advisory Comm. on Prof'l Ethics, 102 N.J. 194, 199 (1986) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)).

In his brief, plaintiff contends that movants "violated their contracts" to provide adequate health care; that they are not entitled to sovereign immunity; and that he was "prejudiced" because the motions were decided prematurely as discovery was incomplete. Here, the judge found that the medical care plaintiff received from Dr. Meo and Dr. Rajiv was not "constitutionally" deficient, a conclusion we have already affirmed, supra. As a non-medical prison official, Collins is not liable for any alleged failure to intervene in decisions relative to plaintiff's medical care, or second-guess the doctors' judgment.

Plaintiff does not have an absolute right to a formulary medication of his choice. An inmate does not have carte blanche access to health care. Deliberate indifference to medical needs does not establish an Eighth Amendment violation unless such needs are "'serious.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992).

Applying these principles, we are satisfied that plaintiff

has failed to make a sufficient showing under the theories he espouses to disturb the judge's findings.

Plaintiff is simply not entitled as an inmate to receive a formulary drug or snack on demand. Therefore, the motions for summary judgment and dismissal were duly granted.

As to the issue of discovery, it "need not be undertaken or completed if it will patently not change the outcome." Minoia v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004). Nothing has been presented to suggest that further discovery would change the outcome here, especially since the issues are largely legal, and not factual, in nature.

Plaintiff's remaining claims of a violation of the New Jersey Administrative Code, Americans with Disabilities Act, and Rehabilitation Act arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION