**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5089-16T2

THE STATE-OPERATED SCHOOL
DISTRICT OF THE CITY OF
PATERSON,

      Plaintiff-Appellant,

and

DONNIE W. EVANS, ED.D.,
in his official capacity as
Superintendent of the Paterson
Public Schools, and JENNIE RIVERA,

      Plaintiffs,

v.

AMERICAN ALTERNATIVE INSURANCE
CORPORATION, and ESSEX INSURANCE
COMPANY,

      Defendants,

and

CLAY THOMAS & ASSOCIATES, LLC,

      Defendant-Respondent.

Argued September 26, 2018 – Decided October 22, 2018

Before Judges Koblitz, Ostrer, and Currier.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3133-15.

Charles A. Yuen argued the cause for appellant (Scarinci & Hollenbeck, LLC, attorneys; Charles A. Yuen, of counsel and on the briefs).

Marshall D. Bilder argued the cause for respondent (Eckert Seamans Cherin & Mellott, LLC, attorneys; Jason S. Feinstein and Marshall D. Bilder, of counsel and on the brief).

PER CURIAM

In this insurance coverage dispute, we address whether the certificate of insurance issued by defendant Clay Thomas & Associates, LLC (defendant or Clay) misrepresented the insurance coverage afforded plaintiff under the respective policies listed on the certificate. After a review of the contentions in light of the record and applicable principles of law, we affirm the trial court's grant of summary judgment to defendant.[1]

---

[1] The other defendants named in the complaint either were dismissed by summary judgment or resolved their differences with plaintiff.

In 2012, plaintiff, the State-Operated School District of the City of Paterson,[2] conducted a public bidding process for the transportation contract for its public school students. The specifications for the contract required that the chosen contractor maintain automobile liability coverage, comprehensive commercial general liability (CGL) coverage, and workers' compensation coverage in specified minimum amounts. In addition, upon signing the contract, the successful bidder was required to provide a "certificate of insurance for the duration of the contract." The bid specifications further stated: "The certificate of insurance shall name the Paterson Public School District as 'an additional insured' party of the policy."

As the successful bidder, K&M Transportation, Inc. (K&M) was awarded the transportation contract. Paragraph seven of the contract required K&M to obtain automobile liability insurance in a specified amount. Although the contract obligated the automobile insurer to name plaintiff as an "additional insured," it was silent as to whether the coverage afforded to plaintiff was to be primary or excess.

In compliance with the bid specifications, K&M procured a Certificate of Liability Insurance (Certificate) from defendant, a licensed insurance producer,

---

[2] We refer to plaintiffs collectively as "plaintiff."

for the applicable period of the contract. The Certificate listed a CGL policy issued by Essex Insurance Company, an automobile liability policy issued by American Alternative Insurance Company (AAIC), and a workers' compensation policy. The Certificate stated: "Paterson Public School District is an additional insured party to the policy."

Following a tragic incident in which a Paterson student suffered fatal injuries while being transported by K&M, and the ensuing litigation, plaintiff sought coverage under the policy issued by AAIC. In denying coverage,[3] AAIC informed that its coverage was excess to any other insurance coverage maintained by plaintiff.[4]

In the complaint filed in this matter, plaintiff alleged defendant misrepresented the "level" of insurance coverage afforded under the AAIC policy. Plaintiff argued that defendant failed to inform plaintiff that the

---

[3] Although not pertinent to the issues in this appeal, AAIC initially also denied coverage on other grounds.

[4] The policy stated: "Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or agreement specifically requires that this insurance be primary in which case any other insurance available to the additional insured shall be considered excess and non-contributing."

coverage provided by AAIC was excess to any other coverage plaintiff might have, despite its additional insured status on the AAIC policy.

During the discovery period, there were several extensions of discovery and a robust motion practice. When plaintiff failed to produce its expert within the court-ordered time frame, a trial judge granted defendant's motion to bar the expert. On June 6, 2017, a different trial judge granted summary judgment to defendant. Plaintiff appeals from both orders.

We review orders granting summary judgment de novo, applying the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995). To defeat summary judgment, the non-moving party must bring forth "evidence that creates a 'genuine issue as to any material fact challenged.'" Brill, 142 N.J. at 529 (quoting R. 4:46-2).

A-5089-16T2

Plaintiff asserts the trial court erred in finding plaintiff could not support its claim for negligent misrepresentation against defendant. To demonstrate a claim for negligent misrepresentation, plaintiff must show "[a]n incorrect statement, negligently made and justifiably relied upon, [which] may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance." H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983). Plaintiff must prove, by a preponderance of the evidence, that plaintiff "received . . . the statements . . . relied on the statements, and that the misstatements therein . . . were a proximate cause of the . . . damage." Kaufman v. I-Stat Corp., 165 N.J. 94, 109 (2000) (quoting Adler, 93 N.J. at 350).

Plaintiff contends defendant "indisputably [mis]represented" that the AAIC policy was a primary policy under which plaintiff was an additional insured. We disagree.

As noted by the second trial judge, the bid specifications did not require the bidder to provide automobile liability insurance to plaintiff on a primary coverage basis. Similarly, the contract between K&M and plaintiff did not require coverage to plaintiff as a primary insured. Both documents were silent as to whether AAIC's policy covered plaintiff on a primary basis with its other insurance coverage or whether it was excess to any other insurance coverage.

The bid specifications and contract, however, did require the automobile liability insurer of K&M to name plaintiff as an additional insured. The Certificate issued by defendant complied with those directives, and plaintiff was named as an additional insured on the AAIC policy. Therefore, as the second trial judge concluded, there was no incorrect information or misstatement on the Certificate pertaining to the AAIC policy.

Moreover, a claim of negligent misrepresentation requires plaintiff to show a reliance on the incorrect statement caused it to sustain damages. "The actual . . . consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission." Kaufman, 165 N.J. at 109. A review of the record confirms plaintiff's inability to prove it considered or relied upon any language in the Certificate prior to the personal injury litigation.

In response to defendant's request for a corporate designee, plaintiff presented three witnesses for deposition. The Supervisor of Purchasing, Neville Williams, testified he was the person most knowledgeable about plaintiff's "receipt and review of any insurance policies, declaration pages, and certificates of insurance" pertaining to the K&M contract. He stated:

A-5089-16T2

Q. Do you know if anyone reviewed . . . the certificate of liability insurance, from the time it was issued until the death of [the student]?

A. No

Q. As far as you know, as the corporate designee on the certificate of insurance, Paterson had no dealings whatsoever with [defendant] prior to the death of [the student]?

A. To my knowledge, no.

Williams also conceded that K&M satisfied the insurance requirements imposed by plaintiff in its bid documents and contract.

Plaintiff also produced its Risk Manager, Laureen Moloney, as another corporate designee. She testified:

Q. When was the first time you ever saw . . . the certificate of liability insurance?

A. Certainly after [the student's] death. I can't be more specific than that.

Q. Do you know if anyone in Paterson saw . . . the certificate of liability insurance, before [the student's] death?

A. I have no personal knowledge of somebody seeing the certificate. The certificate was in a file. So my assumption is that somebody saw it before they put it in the file.

Q. But you can't testify to that?

A. I can't . . . testify [to that]. I can't testify as to who might have handled it.

    . . . .

Q. Wouldn't it be accurate for me to say [] that Paterson has no knowledge if anyone within Paterson did anything with the Clay certificate other than stick it in a file?

A. I have no knowledge of anybody doing anything other than that.

The third designee was plaintiff's Business Administrator, Daisy Ayala.

Her testimony on this issue was:

Q. Do you know if you've ever seen the certificate of [i]nsurance that I have in my hand . . . before today?

A. I can't recall.

Q. To your knowledge, did K&M fail to comply with any of the insurance requirements [i]mposed upon it by Paterson?

    . . . .

A. I can't recall.

Q. You've been designated as the corporate designee on any and all communications between Paterson on the one hand and K&M and [Clay] on the other hand regarding the contract's insurance requirements and certificate of insurance. As you sit here today, you don't know who [Clay] is, do you?

A. I'm not exactly sure.

Q. You had no communication with them?

A. No.

Q. To your knowledge, Paterson had no communications with them, right?

A. To the best of my ability, no.

Plaintiff's own witnesses confirm its inability to demonstrate anyone within the District relied on or even considered the Certificate prior to these events.

Viewing the record in a light most favorable to plaintiff, we are satisfied the trial judge's grant of summary judgment to defendant was supported by the evidence before it and the applicable law, as plaintiff failed to support its claim of negligent misrepresentation. We, therefore, need not reach the issue of whether the court abused its discretion in barring plaintiff's expert. Plaintiff did not contend that expert testimony was necessary for it to demonstrate a prima facie case of negligent misrepresentation. To the contrary, plaintiff stated in his brief, "There is . . . no formal or implied requirement for expert testimony," and "[T]here is nothing . . . here that requires expert testimony."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION