**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0584-17T3

HELEN MECCA and PEGGY MECCA
in their capacity as co-trustees of THE
GENNARO MECCA MARITAL
DEDUCTION TRUST, THE GENERATION
SKIPPING TRUST, THE UNIFIED
CREDIT TRUST, and HELEN MECCA,
individually,

        Plaintiffs-Appellants,

v.

GILBERT M. LEVINE and
LEVINE DESANTIS, LLC,

        Defendants-Respondents.

_____

Argued October 24, 2018 – Decided December 21, 2018

Before Judges Koblitz, Ostrer, and Currier.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4611-15.

David M. Freeman argued the cause for appellants (Mazie Slater Katz & Freeman, LLC, attorneys; David M. Freeman, of counsel and on the briefs).

Michael P. Chipko argued the cause for respondents (Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys; Maxwell L. Billek, of counsel; Michael P. Chipko, of counsel and on the brief).

PER CURIAM

In this legal malpractice matter arising out of the drafting of a will, we review the grant of summary judgment to defendants. Because we find the ruling in a prior litigation that established the testator's intent estopped any claim that defendants breached their duty in preparing the will, we affirm.

Gennaro and Helen Mecca were successful partners both in their personal and professional lives. They raised five children (including Peggy and Anna), ran thirteen separate businesses, and possessed various commercial real estate holdings. In 1994, Gennaro and Helen[1] retained defendants, Gilbert M. Levine, and his firm Levine DeSantis, LLC (defendant) to provide estate planning services and draft Gennaro's will.

Peggy Mecca described herself as her father's "right hand," and she attended all of the meetings with defendant that culminated in the will's finalization in September 1994. Peggy alleged that Gennaro's primary estate planning concern was that Helen "be taken care of if he was to predecease her."

---

[1] We use first names for the Mecca family members for clarity and ease of the reader.

Because they created the businesses together, Gennaro believed Helen "should receive . . . the unfettered benefit of their lifetime work."

Peggy also testified that her father did not want to exclude any family members or children from his will. Helen concurred, stating that Gennaro wanted to protect all of his children's financial interests in his will. Defendant agreed, stating it was his understanding that Gennaro intended to provide for both his wife and his children after his death.

To achieve Gennaro's wishes, defendant created various trusts, into which he transferred Gennaro's ownership interests, with Helen as the sole income beneficiary. Defendant explained the trusts were created to "preserve the assets, not only to ensure that Helen ha[d] the broadest access and benefit from this money where the trust would pay her income and all of her bills and she could take [five] percent, but that at her demise, those trusts [would] go to his children."

The clause of the will at the heart of the Mecca's dispute is the provision requiring an informal accounting to income beneficiaries and vested remainder beneficiaries. Specifically, Section 15.02 of the will provides:

> The Trustee shall be excused from filing any account
> with any court; however, the Trustee shall render an
> annual (or more frequent) account and may, at any other
> time, including at the time of the death, resignation, or

3

removal of any Trustee, render an intermediate account of the Trustee's administration to such of the then current income beneficiaries and vested remaindermen who are of sound mind and not minors at the time of such accounting. The written approval of such accounting by all of such beneficiaries and remaindermen shall bind all persons then having or thereafter acquiring or claiming any interest in any trust . . . .

Gennaro died in 2001. Helen was the executor of the will and a co-trustee with Peggy for the various trusts created under the will. Although Helen and the children continued to run the family businesses, at some point there was a falling out between Anna and the other family members, resulting in Anna's termination from the businesses.

In 2010, Anna instituted suit (first litigation), seeking an accounting of the trusts, and claiming she was entitled to an accounting under Section 15.02 of the will because she was a "vested remainderman." The Mecca family opposed an accounting, arguing Anna was not a "vested" remainder beneficiary or a current income beneficiary under the will and, therefore, not entitled to an accounting. They asserted Anna was not yet vested, as her share in the corpus depended on her surviving Helen, and income remaining in the trusts after Helen's death.

A-0584-17T3

After extensive discovery, the Chancery judge[2] explained he was determining Gennaro's intent at the time of the drafting of his will.  He stated: "[T]he court has to look at the language in the context of the time that it was created and try to ascertain whether or not the language reflects the intention of the individual who put his name to the document or not."  He continued, adding: "The court's job here is not to re-write this document.  The court's job is really to interpret the language."

The judge found the clear language of the provision established Anna as a vested remainderman, and in that capacity, Anna was entitled to an accounting. We affirmed, In re Estate of Mecca, No. A-3233-10 (App. Div. Sept. 13, 2011), stating in pertinent part:

> [I]n the context of this case, defendants are asserting a hyper-technical construction that does not comport with the testator's likely intent and is inconsistent with the plain language of the will.  Section 15.02 requires the trustees to account to the "current income beneficiaries" and the "vested remaindermen."  Thus, the will contemplates that those two classes of beneficiaries will be alive at the same time and will both be entitled to the accounting.  That is consistent with the testimony of the scrivener concerning what he intended in drafting the will.
>
> [Id. slip op. at 6-7 (emphasis added).]

---

[2] A different judge in a different county presided over the litigation that is the subject of this appeal.

A-0584-17T3

The panel also deemed Anna to be a vested remainder beneficiary.

The first litigation settled with Anna receiving $2.2 million. With counsel fees, the Meccas contend they incurred $4 million in damages from the first litigation. Claiming those damages, plaintiffs filed the subject legal malpractice action against defendant, alleging he negligently drafted Gennaro's will.

Defendant moved for summary judgment, and after oral argument, the motion was granted in a written decision issued September 1, 2017. The judge noted initially, the general premise that a will's beneficiaries are entitled to an accounting by the trustee. See United Towns Bldg. & Loan Ass'n v. Schmid, 23 N.J. Super. 239, 246 (Ch. Div. 1952); see also R. 4:87-1(b) (permitting an interested person to compel a fiduciary to settle his or her account). He stated: "As a vested remainder beneficiary, Anna was clearly an interested person under R[ule] 4:87-1(b) and one of the types of beneficiaries contemplated by United Towns who had the right to seek an accounting." The judge also considered, and agreed with, defendant's argument that the doctrine of collateral estoppel barred the malpractice action.

We review a grant of summary judgment de novo, applying the same standard under Rule 4:46 that governed the motion court. See Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199

(2016). Viewing the evidence in the light most favorable to the non-moving party, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c).

On appeal, plaintiffs argue the issue in the malpractice action is whether defendant drafted the will in accordance with Gennaro's wishes, not whether the plain language of the will entitled Anna to request an accounting. They contend the accounting question was the only issue resolved in the first litigation. Therefore, plaintiffs assert the trial court erred in its application of collateral estoppel to bar their claim. We disagree.

In the first litigation, the Chancery judge, affirmed by this court, determined the testator's intent. Anna was deemed a vested remainder beneficiary. This determination was grounded in Helen's deposition testimony. She unequivocally testified that her husband intended to protect the financial interests of all of his children when he was making his will. There were no proofs that Gennaro intended to prevent Anna from benefiting from the trust's assets upon Helen's death.

Therefore, the Chancery judge's decision forecloses any argument in the malpractice action that defendant did not draft the will in accordance with

Gennaro's wishes. Gennaro intended Anna and his other children to be the beneficiaries of the trust upon Helen's death. The will entitles vested beneficiaries, such as Anna, to an accounting.

For collateral estoppel to apply, the party asserting the bar must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding;
> (2) the issue was actually litigated in the prior proceeding;
> (3) the court in the prior proceeding issued a final judgment on the merits;
> (4) the determination of the issue was essential to the prior judgment; and
> (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [In re Estate of Dawson, 136 N.J. 1, 20 (1994) (citations omitted).]

We are satisfied the judge correctly analyzed the requirements of collateral estoppel and determined its application to the malpractice claim required the entry of summary judgment and dismissal of the complaint. The central issue of the malpractice claim has already been "fully and fairly litigated," and cannot be "subject to relitigation between the same parties either in the same or in subsequent litigation." State v. K.P.S., 221 N.J. 266, 277 (2015) (quoting Morris Cnty. Fair Hous. Council v. Boonton Twp., 209 N.J. Super. 393, 444 n.16 (Law Div. 1985)).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION