**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4757-17T4

CARRINGTON MORTGAGE
SERVICES, LLC,

 Plaintiff-Respondent,

v.

MIKE CRISMALI, a/k/a MICHAEL
CRISMALI, a/k/a MICHAEL V.
CRISMALI, INEZ CRISMALI, and
FRAN NOVARRO,

 Defendants,

and

PETER CINTULA and MARYLU
CINTULA, a/k/a MARY LU
CINTULA,

 Defendants-Appellants.

_____

Argued May 16, 2019 – Decided July 5, 2019

Before Judges Simonelli, Whipple and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. F-014309-17.

Ian V. Gallo argued the cause for appellants (Gallo Hildebrand, LLP, attorneys; Ian V. Gallo, on the briefs).

James N. Faller argued the cause for respondent (Houser & Allison, APC, attorneys; Kathleen M. Massimo and Daniel Park, on the brief).

PER CURIAM

Defendants Peter and Mary Lu Cintula appeal from a June 13, 2018 order granting plaintiff Carrington Mortgage Services, LLC's motion for summary judgment, dismissing defendants' counterclaims with prejudice and denying defendants' motion for summary judgment. We affirm.

In 2008, Mike and Inez Crismali executed and delivered a note of $203,506 in favor of Residential Home Funding Corporation, its successors and assigns and a purchase money mortgage to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Residential Home Funding Corporation. Peter and Mary Lu Cintula co-signed the note in order to help their friends, the Crismalis, secure funding to purchase their home. Paragraph nine of the note stated, "each person [who signs this note] is fully and personally obligated to keep all of the promises made in this [n]ote, including the promise to pay the

2                                                                    A-4757-17T4

full amount owed. Any person who is a guarantor, surety or endorser of this [n]ote is also obligated to do these things."

The Crismalis defaulted in April 2010. Chase Home Finance LLC, plaintiff's predecessor, approved a loan modification, and the first payment under the new terms was due on October 1, 2010. On August 24, 2010, Inez Crismali and Peter Cintula signed a Loan Modification Agreement (modification agreement) but Mary Lu Cintula did not.

The modification agreement was to supplement and amend the mortgage on the property and the note secured by the mortgage. Section three of the modification agreement states:

> [t]hat all terms and provisions of the Loan Documents [i.e., the note and mortgage], except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents[.]

The modification agreement increased the principal balance due on the note to $207,645.28 to include past due amounts but decreased the annual interest rate from 7.25% per year to 4.5%. However, in December 2016, the Crismalis defaulted again. On March 28, 2017, MERS assigned the note and mortgage to plaintiff. On June 8, 2017, plaintiff filed a foreclosure action

naming Mike and Inez Crismali and Peter and Mary Lu Cintula as defendants. On July 6, 2017, the Cintulas filed an answer, counterclaim and a cross-claim. The Cintulas' counterclaims alleged plaintiff: (1) violated the Consumer Fraud Act (CFA); (2) breached the covenant of good faith and fair dealing; (3) violated the Truth in Lending Act (TILA); and (4) breached the original loan agreement. The answer alleged neither Peter nor Mary Lu Cintula were party to the modification agreement and the modification agreement was a "unilateral modification" of the original loan agreement made without their consent. They argued plaintiff's predecessor breached the original loan agreement and extinguished the Cintulas' obligation as guarantors of the full amount due under the note. However, during discovery, Peter Cintula admitted he signed the modification agreement, and although Mary Lu did not sign the modification agreement, she admitted she knew Peter had signed "papers" in 2010 related to the Crismalis' mortgage.

On April 26, 2018, plaintiff moved and the Cintulas cross-moved for summary judgment.[1] The Cintulas conceded Peter signed the modification agreement but asserted Mary Lu was the injured party because she did not sign

---

[1] The Crismalis never filed an answer to the complaint or cross-claim and did not appeal.

the document. In particular, Mary Lu alleged she sustained an ascertainable loss of $378,758.93, the amount due on the loan at the time of default, pursuant to the CFA and sought treble damages of that amount.

At oral argument on June 8, 2018, plaintiff's counsel informed the court the Crismalis had reinstated their loan. Nevertheless, the court considered the motions on their merits.

The court granted plaintiff's motion for summary judgment and dismissed the Cintulas' counterclaims finding that even though Mary Lu did not sign the modification agreement, she knew her husband did and had constructive notice of the terms of the modification agreement. The court also found that the modification agreement resulted in a savings of $89,087.94 to the borrowers over the course of the loan. Based on these two findings, the court concluded Mary Lu's obligation as a guarantor was not extinguished. The court relied on the Restatement (Third) of Suretyship and Guaranty § 41(b)(i) (Am. Law Inst. 1996) for the proposition that a modification of the terms of the performance between an obligee and a primary obligor does not discharge the secondary obligor unless a substituted contract was created or the new terms impose a risk on the secondary obligor fundamentally different from the original agreement. The judge found the borrowers received a benefit of $89,087.94 when they

signed the modification agreement, and, as a result, the Cintulas, including Mary Lu, remain obligated to repay the note in full.

The court found the CFA's six-year statute of limitations and the TILA's one-year statute of limitations barred the Cintulas' counterclaims. Mary Lu knew of and should have investigated the loan modification when her husband signed it on August 24, 2010, but waited until July 13, 2017 to bring a claim. Moreover, even if her CFA claim was sustainable, Mary Lu could not prove the modification agreement caused her an ascertainable loss because it reduced the total cost of the loan.

This appeal followed. Although the notice of appeal lists both Cintulas as appellants, the Cintulas' brief argues as though only Mary Lu is seeking relief.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-

2(c). "We must view the evidence in the light most favorable to the non-moving party[.]" Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012).

Mary Lu argues the modification agreement is a contract separate and apart from the original loan agreement, and when the modification agreement was executed without her signature, her obligation under the March 13, 2008 note was extinguished. Based on that incorrect assumption, she argues plaintiff violated the CFA when it accelerated the loan and caused her to incur an improper debt, the modification agreement should be considered a "re-finance" under the TILA and, as a result, she was required to receive certain disclosures. She also argues the original loan agreement was improperly considered parol evidence, the Statute of Frauds prohibits enforcement of the modification agreement and the statute of limitations was tolled until plaintiff filed its foreclosure action. We reject all of these arguments.

The premise that the modification agreement is a contract separate and apart from the original loan agreement is incorrect. The modification agreement is not a substituted contract. The modification agreement altered the terms of performance under the note but did not extinguish the existing obligation to make mortgage payments. The purpose of a contract modification is to simultaneously alter the terms of a prospective performance owed yet maintain

an existing contractual relationship.  13 Corbin on Contracts § 71.1(1) (Jenkins ed. 2003).  After parties agree to a modification, the obligor still must perform the promise as originally agreed, just under the terms of the post-modification contract.  See Int'l Bus. Lists, Inc. v. Am. Tel. & Tel. Co., 147 F.3d 636, 641 (7th Cir. 1998) ("A modification of a contract is a change in one or more respects which introduces new elements into the details of the contract and cancels others but leaves the general purpose and effect undisturbed.").

Section 3(D) of the modification agreement evidences the parties' intent where it states "[t]hat all terms and provisions of the Loan Documents . . . remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or related in whole or in part of the obligations contained in the Loan Documents[.]"  On its face, the modification agreement never extinguished the borrowers' obligation under the original loan agreement. See generally Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) ("[I]t is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties.").

When they signed the original loan agreement, the Crismalis and Cintulas obligated themselves to repay the principal balance and accrued interest over thirty years.  The modification agreement did not alter that central duty, because

the borrowers were still required to repay the amount due under the note. The modification agreement only altered the interest rate applied to the principal balance, which resulted in lower monthly payments and reduced the total cost of the loan. Neither party furnished new consideration nor did the bank agree to make a new loan. Moreover, the borrowers were still required to repay the same principal balance.

The modification agreement was also not a refinance. In a refinance, a new loan pays off the old loan thereby extinguishing the original obligation. See, e.g., 12 C.F.R. § 226.20(a) ("A refinancing occurs when an existing obligation . . . is satisfied and replaced by a new obligation undertaken by the same consumer."). The result is a new contract and satisfaction of the original loan. Here, the modification agreement altered the interest rate assessed on the existing principal balance but did not extinguish the prior obligation.

The Cintulas, as co-signers to the original loan agreement, are co-sureties. By co-signing the original loan agreement, the Cintulas "promise[d] to pay the full amount owed [under the note]." Sureties have several defenses to enforcement of the underlying obligation, one of which is discharge from any unperformed duties. See Restatement (Third) of Suretyship and Guaranty § 41.

A-4757-17T4

If the principal obligor and the obligee agree to a modification . . . of the principal obligor's duties pursuant to the underlying obligation:

. . . .

(b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation:

(i) if the modification creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification;

(ii) in other cases, to the extent that the modification would otherwise cause the secondary obligor a loss[.]

[Ibid.]

See also Ctr. 48 Ltd. P'ship v. May Dep't. Stores Co., 355 N.J. Super. 390, 394 (App. Div. 2002) ("[I]n order to effect a discharge of the guarantor, an alteration or modification of the underlying lease must either injure the guarantor or actually increase the guarantor's risk or liability.").

The modification agreement did not impose any risk fundamentally different from what Mary Lu had previously undertaken and actually conferred a benefit to Mary Lu because it reduced the total cost of the loan. If and when the loan is accelerated, Mary Lu's obligation is less than it would have been under the original loan agreement. We reject the argument that Mary Lu's

obligation was discharged because she did not sign the modification agreement. Although she was not a party to the modification, her duty to perform the underlying obligation is not extinguished, particularly because the modification confers a benefit. Moreover, the modification agreement specifically did not extinguish the original obligation as to any obligors. See Ctr. 48 Ltd. P'ship, 355 N.J. Super. at 408 (guarantor not discharged from an obligation absent explicit language in the modification to that effect and because the modification did not cause the guarantor injury or prejudice).

We also reject Mary Lu's argument that the modification agreement does not comply with the Statute of Frauds, and thus is unenforceable against her, because she did not sign the document. N.J.S.A. 25:1-5(f) provides "[a] contract . . . to loan money or . . . to extend . . . credit" is invalid unless evidenced in a written memorandum and signed by the party to be charged. This argument asks us to ignore the fact that Mary Lu signed the original loan agreement that extended credit to the Crismalis. The modification agreement did not increase the amount of the existing loan nor did it constitute a refinance.

Mary Lu argues the original loan agreement was an inadmissible parol document and should not determine the effect of the modification agreement. The parol evidence rule is not relevant here. Rather, the parol evidence rule

A-4757-17T4

applies when a prior oral or written agreement contains terms in contrast to or missing from a subsequent integrated agreement. Restatement (Second) of Contracts § 213 (Am. Law Inst. 1981). Here, the parties to the modification agreement agreed to modify, but not extinguish or replace, the terms of the original loan agreement.

We agree with the trial court that the CFA and TILA claims were barred by the six-year and one-year statutes of limitations, respectively. See 15 U.S.C. § 1640(e) (claims under the TILA must be brought "within one year from the date of the occurrence of the violation"); Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016) (applying the six-year statute of limitations to CFA claims per N.J.S.A. 2A:14-1). Mary Lu's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4757-17T4