**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0111-18T1

ROBERT B. PATEL, M.D. and
MID-ATLANTIC MEDICAL
ASSOCIATES, LLC,

      Plaintiffs-Appellants,

v.

MERIDIAN HEALTH SYSTEM,
INC., and TIMOTHY HOGAN,

      Defendants-Respondents.

_____

Argued October 10, 2019 – Decided October 31, 2019

Before Judges Fuentes, Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4247-15.

Andrew L. Schlafly argued the cause for appellants.

Bruce A. Levy argued the cause for respondents (Gibbons PC, attorneys; Bruce A. Levy and Damian Vincent Santomauro, on the brief).

PER CURIAM

Plaintiffs Robert B. Patel, M.D. (Patel) and Mid-Atlantic Medical Associates, LLC (Mid-Atlantic) appeal from August 2, 2018 orders striking plaintiffs' expert report and granting summary judgment for defendants on all claims. We affirm.

Patel, a physician, is board certified in internal medicine and owns Mid-Atlantic, a medical group engaged in the practice of internal medicine. Meridian Health System, Inc. (Hospital) owns and operates Bayshore Community Hospital (Bayshore). Plaintiff obtained staff privileges at Bayshore in April 2011.

In affiliating with Bayshore, Patel agreed to abide by the Hospital's constitution, by-laws, and policies. The by-laws required Patel to maintain an office and actively practice in the geographic area served by Bayshore. The by-laws also gave the Hospital the right to summarily suspend Patel's medical staff privileges provided the suspension was in the patients' best interests.

In early 2012, a Hospital employee, Dr. Scott Larsen, became aware of potential issues regarding Patel's affiliation with Bayshore. Larsen heard Patel lacked an active medical practice within the required distance from Bayshore. In addition, Larsen learned Patel was transferring a disproportionate number of

2

patients from Bayshore to other hospitals. As a result, Larsen commenced an internal investigation into these allegations.

In April 2012, a multi-disciplinary peer review committee examined Patel's patient transfers from the fourth quarter of 2011 to the first quarter of 2012. After reviewing the transfers of patients by Patel to other hospitals, the committee recommended "to reduce or remove [Patel] from call and that an in-depth FPPE [Focused Professional Practice Evaluation] should be done on his cases."

In early May 2012, Larsen prepared a memorandum analyzing patient charts for seven of Patel's patients that were among the charts examined by the multi-disciplinary peer review committee. According to Larsen, patient transfers were inappropriate in four out of the seven cases.

The Hospital subsequently informed Patel, in writing, that he was "being summarily suspended from the Medical Staff at Bayshore . . . effective immediately in accordance with . . . the . . . Bylaws." According to the letter, Patel violated the Hospital's by-laws by not "actively practicing his profession in the area served by Hospital, or [producing] evidence of a firm commitment to actively practice in the area served by the Hospital." The letter also stated Patel "engaged in the transfer of patients contrary to the best interest of the Hospital's

patients." Patel was advised of his right to request an appearance before the medical executive committee (MEC) regarding his suspension.

The MEC met to review Patel's suspension. It upheld Patel's suspension and voted to terminate his privileges. Patel then requested a hearing before the fair hearing committee (FHC).

The FHC found Patel's patient transfers difficult to justify. It found "no evidence in the record that the transferred patients received some order of necessary care at the receiving hospital which could not have been administered at [Bayshore] either in the form of clinical decision-making or mechanical devices." As a result, the FHC concluded the "[t]ransfers present an inherent danger to the patients involved" and resulted in no advantage to the patients. The FHC also addressed the requirement in the Hospital's by-laws that Patel maintain an active medical office in the area served by Bayshore. It found Patel's office was "a front to provide [him] superficial compliance with the By-Laws/Rules and Regulations." The FHC concurred in the decision to suspend and revoke Patel's privileges.

The Hospital's Board of Trustees convened an ad hoc committee to review the FHC's findings and recommendations. After reviewing the record, the Board of Trustees affirmed the suspension and revocation of Patel's privileges.

A-0111-18T1

Following the Hospital's action, Patel filed suit.  In his complaint, Patel alleged violations of the New Jersey Law Against Discrimination (NJLAD), breach of contract, tortious interference with contract, and defamation.

Patel took no discovery related to his lawsuit.  Instead, he relied on the internal investigation reports, committee reports, and other written communications regarding his suspension.  In support of his damages claim, Patel submitted a three-page expert report prepared by a certified public accountant.  Patel's accountant expert opined that Patel lost $20 million as a result of the Hospital's wrongful suspension of his privileges.

At the close of discovery, defendants moved for summary judgment and to strike the testimony of Patel's accountant expert as a net opinion.  The motion judge, Jamie S. Perri, J.S.C., granted both motions in August 2, 2018 orders.

We conduct a de novo review of the summary judgment order, applying the same standard as the trial court.  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  Summary judgment should be granted if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co.

of Am., 142 N.J. 520, 539-40 (1995). We affirm for the reasons expressed by Judge Perri in her thorough and detailed decision.

We add only the following comments related to Patel's argument that the judge misapplied the Health Care Quality Improvement Act of 1986 (HCQIA or Act), 42 U.S.C. §§ 11101 to 11152. The HCQIA was intended to shield health care entities and doctors against lawsuits resulting from the monitoring and reporting of incompetent health care professionals. Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 31 (1st Cir. 2002). The Act provides immunity to a health professional review body from lawsuits seeking monetary damages, so long as the procedural safeguards set forth in the HCQIA are followed. See 42 U.S.C. § 11111(a).[1]

The procedural safeguards are codified in 42 U.S.C. § 11112(a), which states:

> a professional review action must be taken -- (1) in the reasonable belief that the action was in the furtherance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the

---

[1] A professional review body is defined as "a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity." 42 U.S.C. § 11151(11).

physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section [42 U.S.C. § 11111(a)] unless the presumption is rebutted by a preponderance of the evidence.

Whenever an adverse professional review action is undertaken by a hospital, the Act presumes the hospital is immune from suit and the plaintiff bears the burden of rebutting that presumption. See Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 289 (App. Div. 2014). Here, Patel claims the Hospital failed to provide adequate notice and hearing procedures and therefore is not entitled to immunity under the HCQIA.

The parameters for adequate notice and hearing provisions mandated by the HCQIA are set forth in 42 U.S.C. §11112(b). A physician must be given notice "that a professional review action has been proposed to be taken against the physician," and the "reasons for the proposed action[.]" 42 U.S.C. § 11112(b)(1)(A). The HCQIA provides an exception for adequate notice and hearing procedures when "the failure to take such an action may result in an imminent danger to the health of any individual." 42 U.S.C. § 11112(c)(2).

A-0111-18T1

Patel was provided proper notice and hearings regarding the Hospital's suspension of his privileges. He was present at and participated in the multi-disciplinary peer review committee meeting where his patient transfer habits were discussed. Patel's attendance at this meeting served as notice that his privileges could be suspended for taking action that potentially posed an imminent danger to patients. In addition, Patel received a letter advising of his summary suspension based on the Hospital's review of his activities, including the transfer of patients to other hospitals contrary to their best interests. This letter notified Patel of his right to request an appearance before the MEC, and he exercised that right. Having reviewed the record, Patel participated in all administrative reviews related to his suspension and thus had adequate notice and hearings consistent with 42 U.S.C. § 11112(b).

Further, the Hospital summarily suspended Patel based on an imminent danger to patients as a result of his unnecessary transfers to other hospitals. Therefore, the HCQIA's exception to the notice and hearing requirement applied. 42 U.S.C. § 11112(c)(2).

Various committees at the Hospital concluded Patel's patient transfers were contrary to the best interests of the Hospital's patients and presented an inherent danger to those patients. The Hospital found Patel's patient transfers

8 A-0111-18T1

resulted in no advantage to the patients because the same services and medical equipment at the transfer hospitals were available at Bayshore. Nor is there any evidence in the record that the services provided by the hospitals receiving Patel's patient transfers were better than the services provided by Bayshore. These findings demonstrated Patel's patient transfers presented an "imminent danger to the health of any individual" and fell within the exception under 42 U.S.C. § 11112(c)(2).

We are satisfied plaintiffs' complaint was properly dismissed for the reasons expressed by Judge Perri and that she correctly concluded defendants were immunized from plaintiffs' lawsuit for monetary damages consistent with the HCQIA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION