**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4431-17T3

CONCEPTS TV
PRODUCTIONS, LLC,

      Plaintiff-Respondent/
Cross-Appellant,

v.

STEPHEN N. SHARPE,

      Defendant-Appellant,

and

ELITE TITLE GROUP, LLC,
WESTCOR LAND TITLE
INSURANCE COMPANY,

      Defendants/Cross-
Respondents,

and

TOWNSHIP OF MONTVILLE,

      Defendant-Respondent.
_____

Argued telephonically August 1, 2019 – Decided August 27, 2019

Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2490-16.

Glenn R. Cochran argued the cause for appellant.

Mark Joseph Brancato argued the cause for respondent/cross-appellant (Mc Hugh & Brancato, LLP, attorneys; Mark Joseph Brancato, on the brief).

Dennis Joseph Francis argued the cause for cross-respondent Elite Title Group, LLC.

Russell M. Finestein argued the cause for cross-respondent Westcor Land Title Insurance Company (Finestein & Malloy, LLC, attorneys; Russell M. Finestein and Daniel L. Finestein, on the brief).

Dorsey & Semrau, attorneys for respondent Township of Montville (Dawn M. Sullivan, on the brief).

PER CURIAM

Defendant Steven N. Sharpe (Sharpe) appeals from a February 6, 2018 order granting summary judgment in favor of plaintiff Concepts TV Productions, LLC (Concepts). Sharpe also appeals from a May 3, 2018 order denying reconsideration of the February 6, 2018 order. Concepts cross-appeals a portion of the February 6, 2018 order requiring it to pay escrowed funds to the Township of Montville (Montville). We reverse the February 6, 2018 order granting summary judgment as against Sharpe and affirm the portion of the order

A-4431-17T3

requiring Concepts to pay escrowed funds to Montville. We need not reach the denial of reconsideration entered on May 3, 2017.

We discern the following facts from the record. In 2002, Sharpe purchased a vacant commercial property known as 53 Indian Lane East in Montville. Sharpe filed for and secured the necessary approvals from various government bodies in order to construct a two-story commercial building. Based on his construction plans, Montville calculated the water and sewer connection fees and stamped "MUA connections fees due at time of actual connection" on the permit application. Sharpe began construction of the building but did not complete it. Sharpe continued to improve the property and sought temporary water service from Montville in the spring of 2014. Sharpe sought to avoid paying the water connection fee because the building was only a shell and he only wanted to irrigate the landscape. On May 27, 2014, Montville approved Sharpe's application for temporary water service and installed a temporary water meter on the premises. According to Montville's construction file entry of May 22, 2014, Montville "[s]et up [an] inactive account will pay connection fee of $31,493.00 when building is sold, in contract new owners to pay fees[.]" Montville turned off the temporary water service in January 2015 and billed Sharpe for the water he used and Sharpe paid the bill in

full.  In the spring of 2015, Sharpe found a prospective purchaser for the property.  Following negotiations, he entered into a written sales contingency agreement with a religious organization.

According to Sharpe, the religious organization discovered the connection fee issue when it conducted its own due diligence inquiries and agreed to pay the connection fee upon closing.  After executing the contract with the religious organization, Sharpe approached Montville to reactivate the temporary water service so he could irrigate the landscape.  Montville refused, saying connection fees were due in full before the water service would be re-established.  Sharpe informed Montville that his buyer had agreed to pay the connection fees.  Montville refused Sharpe's request for temporary water.  Ultimately, the religious organization exercised its option to terminate the agreement because it did not meet funding contingencies.

In August 2015, Concepts contracted with Sharpe to purchase the property.  According to the real estate sales agreement between Sharpe and Concepts, the property was being sold "as is" and Concepts had thirty days to conduct the necessary due diligence.  Concepts hired Charles Dietz, an architect, to conduct the due diligence inquiries.  The record contains no report from Dietz, and during a deposition, Concepts's owner testified she was unaware of what

4

inquiries, if any, were made. In preparation for closing, Concepts retained Elite Title Group, LLC (Elite), as a policy-issuing agent of Westcor Land Title Insurance Company (Westcor), to issue an owner's title policy. Elite provided a title binder that included a report from Action Title Research (Action) showing no liens or assessments on the property. Elite prepared the closing statement for Concepts. Action's tax search disclosed unpaid taxes but did not identify any water or sewer fees owed at the time of closing. Sharpe conveyed the property to Concepts by deed dated November 4, 2015. At the time of closing, the property consisted of a landscaped lot, a parking lot and a shell of a building with no connection to the municipal sewer or water system. There were no liens on the property that would have informed Concepts that a fee for sewer and water connection would later be due. Sharpe executed a seller's affidavit of title stating,

> [w]e have always obtained all permits and certificates of occupancy. All charges for municipal improvements such as sewers, sidewalks, curbs or similar improvements benefiting this property have been paid in full. No one has notified us that money is due and owing for construction, alteration or repair work to this property.

After purchasing the property, Concepts learned Sharpe had never paid the $31,493 sewer and water connection fee. In February 2016, an employee of

Concepts' contractor met with a representative of Montville's construction department regarding their application for building permits for the completion of the building's interior. At this meeting, Concepts learned of the water fee charges. That obligation prevented Concepts from securing a certificate of occupancy. Montville knew the water meter and connection fees were unpaid for over one year prior to the transfer of the property but did not place a lien on the property and permitted the fee to remain unpaid until the new owner connected to the system.

On October 13, 2016, Concepts filed a verified complaint in the Chancery Division against Sharpe, Elite, Westcor and Montville. Concepts asserted Sharpe had incurred water and sewer connection charges of $31,493. Concepts sought a declaration that Montville's water connection lien was null and void, Westcor owed coverage and indemnity to Concepts, either Elite, Sharpe or Westcor must satisfy or remove the lien, or Montville must remove the lien and issue a certificate of occupancy.

In January 2017, after interior plumbing was installed on the property, Concepts made permanent connection to the public sewer and water systems. The sewer and water connection fee was $31,493 and became due on January

6

30, 2017. In order to obtain a certificate of occupancy from Montville, Concepts deposited $31,493 in an escrow account pending resolution of the litigation.

After the case was transferred to the Law Division, on September 27, 2017, Concepts moved for summary judgment against all defendants. Sharpe, Westcor, Elite and Montville filed respective cross-motions for summary judgment.[1] The judge heard argument on January 31, 2018. By order entered February 6, 2018, the judge granted summary judgment in favor of Concepts against Sharpe in the amount of $31,493. The judge determined

> Sharpe knew that there was a connection fee . . . well before closing. . . . The fact that the town doesn't record it as a lien, the fact that the town doesn't consider it a fee until it's actually connected is of no moment. It's clear to me that Sharpe knew about it, and Sharpe should assume responsibility for that.

The judge also determined Concepts' funds held in escrow should be paid to Montville and Concepts would have to seek reimbursement from Sharpe.

On February 6, 2018, the judge granted summary judgment to the remaining defendants. Sharpe moved for reconsideration, which the judge denied by order entered May 3, 2018. Sharpe appealed, and Concepts cross-

---

[1] The motions filed by Westcor, Elite and Montville are not contained in the record.

A-4431-17T3

appealed the portion of the order granting summary judgment to Montville, arguing it should not be required to pay the escrowed funds to Montville.

On appeal, Sharpe raises the following argument:

> THE TRIAL COURT ERRED IN HOLDING THAT DEFENDANT SHARPE'S FAILURE TO DISCLOSE TO PLAINTIFF THE UNPAID WATER AND SEWER CONNECTION FEES CONSTITUTED A BREACH OF THE COVENANT AGAINST GRANTOR'S ACTS AND FAILED TO CITE ANY AUTHORITY TO SUPPORT ITS CONCLUSION THAT, UNDER THESE CIRCUMSTANCES IN A COMMERCIAL TRANSACTION, DEFENDANT SHARPE HAD AN AFFIRMATIVE DUTY TO DISCLOSE THE UNPAID FEES.

In its cross-appeal, Concepts raises the following argument:

> THE TRIAL COURT WAS CORRECT IN FINDING STEPHEN SHARPE FAILED TO DISCLOSE A KNOWN ENCUMBRANCE BUT ERRED IN FINDING THE ENCUMBRANCE SHOULD BE PAID BY CONCEPTS.

When determining whether to grant summary judgment under Rule 4:46-2(c), "the court must accept as true all the evidence which supports the position of the party defending against the motion and must accord him [or her] the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995) (alteration in original) (quoting

Lanzet v. Greenberg, 126 N.J. 168, 174 (1991)). If the evidence "'is so one-sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." Id. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). We review summary judgment orders de novo, utilizing the same standards applied by the trial courts. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). "When no issue of fact exists, and only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court." Ibid.

Under Rule 4:49-2, reconsideration is a matter within the sound discretion of the trial court and should be exercised for good cause shown. Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 263-64 (App. Div. 1987). We only disturb the trial court's decision if it produced error that is "clearly capable of producing an unjust result." R. 2:10-2. However, the trial court's interpretation of the law is afforded no special deference, and this court's review of legal issues is de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

On appeal, Sharpe argues that a breach of the covenant against grantor's act required an affirmative act where the land conveyed is or will be encumbered in title due to the actions of the grantor. Sharpe submits because the connection

fees were not a lien at the time of the conveyance, he did not encumber the property. Sharpe also disputes whether he had any affirmative duty to disclose that a payment for sewer and water connection would be owed in the future. Sharpe argues Concepts should have been able to ascertain that, at the time of contract, the water and sewer connection fees would later be due because the building was devoid of running water, the contract provided the opportunity to perform due diligence and public records disclosed that water and sewer fees were outstanding. Sharpe contends there is no duty to disclose matters that both parties have means of acquiring information. Sharpe argues his failure to disclose unpaid water and sewer connection fees did not violate the covenant against grantor's acts because said fees were not an encumbrance at the time of closing. He also argues the judge erred by finding he had an affirmative duty to disclose the connection fees.

Thus, the question before us is whether N.J.S.A. 46:4-6 imposes on a seller in a commercial real estate transaction an obligation to disclose connection fees that are not a lien or encumbrance on the property at the time of closing.[2] We conclude it does not.

---

[2] We note Concepts's verified complaint does not raise any claims of common law fraud, misrepresentation or breach of contract, therefore we do not discuss

N.J.S.A. 46:4-6 provides:

> A covenant by the grantor in a deed "that he has done no act to encumber the said lands[,]" [] shall have the same effect as if he covenanted that he had not done or executed, or knowingly suffered to be done or executed, any act, deed or thing whereby the lands and premises conveyed, or intended so to be or any part thereof, are or will be changed, charged, altered, affected, defeated, or encumbered in title, estate or otherwise.
>
> [N.J.S.A. 46:4-6.]

Our Supreme Court has held that "an assessment for benefits cannot be enforced until the benefit has been conferred." Green v. Montclair, 125 N.J.L. 19, 20 (Sup. Ct. 1940) (holding assessments for laying sewer and connection with abutting property "are not in anywise a present lien on such abutting property, and cannot in any event become such until a present benefit is conferred"). In Lenton Construction Co. v. Hill, 4 N.J. Super. 66, 68-69 (App. Div. 1949), a land purchaser challenged a judgment of the trial court that held the purchaser was not entitled to recover the amount of a sewer assessment

---

whether Sharpe's deliberate omission of information denied Concepts of the benefit of the bargain it struck. Ordinary fraud requires a material factual misrepresentation, knowledge of the falsity, an intent to induce reliance on it and actual reliance that results in monetary damages. Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981). Fraud must be pled with particularity, In re Contest of Nov. 8, 2005 Gen. Election for Mayor of Parsippany-Troy Hills, 192 N.J. 546, 567 (2007), although the element of "[m]alice, intent, knowledge, and other condition of mind of a person may be alleged generally." R. 4:5-8(a).

A-4431-17T3

levied against land it purchased from the seller because there were no unconfirmed assessments against the land at the time the contract for the sale of the land was executed. There, we determined

> the assessment on the lots in question—the apportionment of the cost of the improvement, the fixing of the amount of benefits—was not made until March 1, 1947, and did not become a lien until confirmed on March 18, 1947; that there were no unconfirmed assessments on the lots in question in April 1946 [at the time of sale] . . . .
>
> [Id. at 69.]

Here, the connection fee was not a lien or encumbrance at the time of closing. No funds were owed to Montville at the time of closing. Concepts argues it was informed by Montville's building department that Sharpe had incurred the $31,493 charge. Although someone might have conveyed that to Concepts, the facts in the record demonstrate otherwise. Sharpe did not pay the connection fee because the building was not connected to water or sewer service when Sharpe sold it. Sharpe did not encumber the property with a legally enforceable encumbrance by not paying the connection fee. Concepts only raised the argument the connection fee was an undisclosed lien without proof Montville placed a lien on the property. Without some other legal basis to

impose liability, we are constrained to reverse the February 6, 2018 order granting summary judgment in favor of Concepts.

Concepts' cross-appeal lacks merit. Concepts asks us vacate the portion of the order requiring the payment of funds to Montville, arguing Montville's remedy is to seek payment from Sharpe. It is apparent that Montville could not pursue reimbursement from Sharpe because Sharpe did not incur the connection fee. Concepts incurred the fee when it connected to the Montville water and sewer system.

Given these circumstances, we discern no error and therefore affirm the portion of the trial judge's order requiring Concepts to release escrowed funds for the connection fee, a charge they incurred. We have carefully reviewed the record regarding all remaining arguments and have determined they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4431-17T3