**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3241-18T1

ADRIANE WILLIAMS,

     Plaintiff-Appellant,

v.

COUNTY OF BURLINGTON
COUNTY,

     Defendant-Respondent.

_____

Submitted January 13, 2020 – Decided February 28, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2033-16.

Adriane Williams, appellant pro se.

Malamut & Associates, LLC, attorneys for respondent (Daniel Gee, on the brief).

PER CURIAM

Plaintiff Adriane Williams appeals pro se from an October 17, 2018 order

granting the County of Burlington's (the County) motion for summary judgment,

dismissing plaintiff's complaint which alleged that the County violated the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2. Plaintiff's claim arose while incarcerated at the Burlington County Corrections & Work Release Center (CWRC), when another inmate threw hot liquid at her and punched her several times. Plaintiff alleged that CWRC officials were aware of or recklessly indifferent to the inmate's violent history but, nonetheless, housed her in the general population. She further alleged that the County failed to train its employees and "enact appropriate polices" concerning prisoner placement and safety. Having reviewed the record, and in light of the applicable law, we affirm.

We discern the following facts from the record. In August 2014, plaintiff was charged with several indictable offenses for acts she committed in Burlington County. Thereafter, she was incarcerated at the CWRC. Another individual, Angela Johnson, was incarcerated there at the same time. To determine the inmates' housing within the CWRC, a classification committee completed an initial custody assessment, which required a classification specialist to consider seven objective criteria.[1] Inmates receiving a score of

---

[1] The assessment form required consideration of (1) the severity of the current charges/convictions; (2) serious offense history; (3) escape history; (4) institutional disciplinary history; (5) prior indictable convictions; (6) alcohol/drug history; and (7) stability factors.

eleven or greater were classified as "maximum," while inmates receiving a score of less than eleven were classified as either "medium" or "minimum." However, the committee could override a classification if it found factors warranting a different classification. This classification system is used uniformly in adult county correctional facilities throughout New Jersey.

The CWRC's G-wing housed inmates classified as "maximum." While plaintiff received a score of less than eleven points, her assessment form indicated that the committee overrode her score and classified her as "maximum." Johnson received a score greater than eleven points and was also classified as "maximum." Thus, both inmates were housed in the G-wing.

Around 4:30 a.m. on January 19, 2015, Johnson entered plaintiff's cell and threw a cup of hot liquid in her face. The two inmates then engaged in a physical altercation. Several officers arrived on the scene. When the sergeant arrived, he "found . . . Johnson kneeling over [plaintiff] . . . [and] punching [her]." He administered pepper spray to try to stop the fight, but Johnson resisted his efforts, so the officers restrained her and removed her from the area. Both inmates were sent to the health clinic, and plaintiff was later transported to Lourdes Medical Center of Burlington County, where she was treated for facial burns and a corneal abrasion. The inmates were also placed on detention status,

and each received a disciplinary charge for fighting with another person. After a disciplinary hearing, plaintiff was found not guilty because she had been defending herself from Johnson, the initial aggressor.

As a result of this incident, on September 29, 2016, plaintiff filed a complaint against the County, alleging that it had violated the NJCRA and the New Jersey Constitution, article I, paragraph I. She alleged various unnamed CWRC officials "were aware of or recklessly indifferent to . . . Johnson's history of violent assaults against other inmates and/or corrections officers" but still decided to house her with the general population. She further alleged that the County "fail[ed] to train, supervise, or monitor its employees with respect to the classification or placement of prisoners or prisoner safety generally . . . [and] to enact appropriate policies, practices, or guidelines with respect to placement of prisoners and prisoner safety generally."

In lieu of an answer, the County filed a motion to dismiss, asserting immunity under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Judge John E. Harrington denied the motion, finding that plaintiff had sufficiently pled facts to support substantive due process claims under the state-created-danger theory and the failure to train theory.

At the end of discovery, the County filed a motion for summary judgment, again asserting that it was entitled to immunity under the TCA and claiming that there were no issues of material fact. After a hearing on October 12, 2018, the judge determined that the County was entitled to a defense under the NJCRA because it complied with its classification rules, and "[t]here was no suggestion, no prior indication, [and] no prior relationship with [Johnson] that would have clued . . . in" the County that Johnson posed a threat to other inmates.[2] Accordingly, the judge granted the County's motion for summary judgment and issued a written order on October 17, 2018. This appeal ensued.

On appeal, plaintiff raises the following argument:

> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE [COUNTY] BECAUSE IT FAILED TO FOLLOW THE BRILL[3] MANDATE BY NOT CONSIDERING ALL COMPETENT EVIDENTIAL MATERIALS IN A LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY; AND MERELY ACCEPTING AS

---

[2] The judge also acknowledged that the County would be immune from liability for "any injury caused by . . . a prisoner to any other prisoner," under the TCA. N.J.S.A. 59:5-2(b)(4). However, as the judge previously found in denying the County's motion to dismiss, plaintiff's claims were brought exclusively under the NJCRA. Accordingly, we focus our decision on the NJCRA, rather than the TCA. Parenthetically, we note that plaintiff produced no evidence showing that the County's employees engaged in willful misconduct, which is outside the scope of TCA immunity. Tice v. Cramer, 133 N.J. 347, 375 (1993).

[3] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995).

TRUE THE DOCUMENTS, DEPOSITIONS AND SWORN AFFIDAVITS PROVIDED BY THE [COUNTY] IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT[.]

We review a summary judgment ruling de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The trial judge must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. If there is no issue of fact, we need not defer to the trial judge's decision. Templo Fuente, 224 N.J. at 199 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The NJCRA provides that "[a]ny person who has been deprived of any substantive due process . . . rights . . . secured by the Constitution or laws of the United States, or any substantive rights . . . secured by the Constitution or laws

of this State . . . may bring a civil action for damages . . . or other appropriate relief." N.J.S.A. 10:6-2(c). This statute was modeled after 42 U.S.C. § 1983,[4] so we apply the same elements to claims brought under both the federal and state statutes. Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011).

The NJCRA "is not a source of rights itself." Gormley v. Wood-El, 218 N.J. 72, 98 (2014); see Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (explaining that 42 U.S.C. § 1983 does not create substantive rights). A plaintiff must "identify the state actor . . . that has caused the alleged deprivation" and then "identify a 'right, privilege or immunity'" provided for in the Constitution or another law. Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 468 (App.

---

[4] 42 U.S.C. § 1983 governs civil actions for the deprivation of federal constitutional and statutory rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Div. 2012) (quoting Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 363 (1996)).

The Fourteenth Amendment provides, in part, that "[n]o [s]tate shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This substantive due process right guarantees individuals the right to freedom from state-created danger. See DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 201 (1989). Under the state-created-danger theory, a plaintiff may demonstrate that the government violated a substantive due process right by showing that "the [government] either create[d] dangers that proximately cause[d] injury or render[ed] the [plaintiff] more vulnerable to those dangers." Gormley, 218 N.J. at 101. The plaintiff must present evidence that satisfies four elements:

> (1) "[T]he harm ultimately caused was foreseeable and fairly direct;"
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or "a member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

[Ibid. (quoting Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006)).]

Alternatively, the plaintiff may show that the government violated his or her rights through its "failure to train its employees" and its "'deliberate indifference' to the rights of its inhabitants." City of Canton v. Harris, 489 U.S. 378, 389 (1989). Relevant considerations include the adequacy of the government's training program; any deficiencies in the program that are the result of mere negligent administration, rather than policy; and whether any deficiency was closely related to the injury. Id. at 390-91.

Notwithstanding the above, a municipality is only liable for the conduct of its employees if a constitutional violation is the result of municipal policy or custom. Loigman v. Twp. Comm. of Middletown, 185 N.J. 566, 590 (2006) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). The plaintiff may show that "a policy existed 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" Watson v. Abington Township, 478 F.3d 144, 155 (3d Cir. 2007) (alteration in original) (internal quotation marks

omitted) (quoting <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990))

Alternatively, "[a] plaintiff may establish a custom . . . 'by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" <u>Id.</u> at 155-56 (quoting <u>Bielevicz</u>, 915 F.2d at 850).

Plaintiff contends that granting summary judgment in favor of the County was improper because there was a question of material fact, as there was evidence of the following: An officer left her post in the inmate living area without authorization, in violation of N.J.A.C. 10A:31-8.12(d); an officer had prior knowledge of Johnson's dangerous nature; several CWRC officials willfully submitted false documents; and a CWRC official altered a confidential medical record. We find that these claims lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E). We add only the following.

As the trial judge determined, plaintiff's complaint alleged violations of the NJCRA under the state-created-danger theory and the failure to train theory. Because the County is a municipality, plaintiff was required to show that it either had a policy or custom that violated her constitutional rights or that it applied a policy or custom in a manner that violated her rights. <u>Loigman</u>, 185 N.J. at 590 (citing <u>Monell</u>, 436 U.S. at 694). The CWRC's classification process is the same

process used at all adult county correctional facilities throughout New Jersey. Plaintiff provided no explanation or evidence as to how the classification process itself violated her constitutional rights, and she did not contest either her or Johnson's classification based on their initial custody assessments. Further, the record lacks evidence of a history of violence between plaintiff and Johnson and that CWRC employees or officials were on notice that Johnson was likely to start a fight with plaintiff. Plaintiff's contentions to the contrary are unsupported.

We conclude that the record lacks competent evidence that would allow a jury to find that the County violated the NJCRA. See Brill, 142 N.J. at 540. Accordingly, we affirm the judge's order granting summary judgment in favor of the County.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3241-18T1